UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> - AGAINST - <br><br> CHRISTOPHER REESE, <br><br> DEFENDANT. | 24 Cr. 402 (VEC) |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S PRETRIAL MOTIONS**

ZMO Law PLLC
353 Lexington Avenue, Suite 900
New York, NY 10016
(212) 685-0999
zach@zmolaw.com

Zachary Margulis-Ohnuma
Tess Cohen
*ATTORNEYS FOR DEFENDANT CHRISTOPHER REESE*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

FACTS .............................................................................................................................1

    A.   Background..............................................................................................1

    B.   Mr. Reese's prior related violations of supervised release .....................2

    C.   Allegations in the Indictment.................................................................3

    D.   Procedural History .................................................................................5

    E.   The Search Warrants .............................................................................6

    F.   Mr. Reese's Statement to Law Enforcement .........................................7

ARGUMENT ..................................................................................................................8

  I.   COUNT THREE OF THE INDICTMENT MUST BE DISMISSED....................9

    A.   The conduct alleged in the Indictment does not set forth a violation of
        New York Judiciary Law § 484, which is a prerequisite for criminal
        liability under § 485-a. ........................................................................10

    B.   The allegations in the Indictment consist of speech protected by the
        First Amendment. ................................................................................14

    C.   The government's proposed application of the ACA is preempted by
        federal law...........................................................................................16

  II.  THE FRAUD AND MONEY LAUNDERING COUNTS MUST BE DISMISSED
       BECAUSE NO FRAUD IS ALLEGED. ...........................................................19

  III. THE INDICTMENT SHOULD BE DISMISSED BECAUSE IT APPEARS TO BE
       IN RETALIATION AGAINST MR. REESE'S PUBLIC CRITICISM OF THE
       ASSIGNED ASSISTANT UNITED STATES ATTORNEYS; IN THE
       ALTERNATIVE, THE CASE SHOULD BE RE-ASSIGNED TO PROSECUTORS
       WHO DO NOT HAVE A PERSONAL INTEREST IN THE OUTCOME...........22

    A.   Facts Supporting the Inference of Vindictiveness..................................22

    B.   Standards for Vindictive Prosecution ...................................................26

    C.   Mr. Reese has demonstrated that AUSAs Pertz and Wikstrom have a
        personal interest in the outcome of this action, giving rise to a
        presumption of vindictiveness. ...........................................................27

  IV. THE FRUITS OF THE SEARCHES OF MR. REESE'S HOME, INTERNET
       ACCOUNTS, AND ELECTRONIC DEVICES SHOULD BE SUPPRESSED
       BECAUSE THE WARRANTS WERE NOT SUPPORTED BY PROBABLE
       CAUSE AND ARE OVERBROAD. ...............................................................28

    A.   The warrant applications fail to allege probable cause to believe Mr.
        Reese was committing the crimes of unauthorized practice of law,
        scheme to defraud the United States, or wire fraud.............................29

    B.   The additional allegations regarding wire fraud in the Apartment
        Warrants application are misleading; even taken at face value they

cannot support probable cause to believe Mr. Reese committed wire fraud. ....................................................................................... 33

C.  The purported probable cause in the Apartment Warrants is insufficient to conclude Mr. Reese's business was "pervaded" by fraud justifying an all-records warrant. ............................................................ 35

D.  The probable cause that Mr. Reese made false statements to Probation could not support the sweeping warrant to search Mr. Reese's home and devices. ...................................................................... 36

V.  REESE'S STATEMENTS ON APRIL 10, 2024 TO LAW ENFORCEMENT MUST BE SUPPRESSED BECAUSE HE WAS REPRESENTED BY COUNSEL WITH RESPECT TO THE CHARGES UNDER INVESTIGATION. ................. 40

CONCLUSION .................................................................................. 42

## PRELIMINARY STATEMENT

The government in this case proposes to make novel use a suite of statutes to criminalize conduct it understandably finds annoying: a layman providing affordable legal assistance to federal defendants struggling to communicate with their appointed or retained attorneys, and desperately seeking help in the unbalanced world of defending against federal prosecution. But, as detailed below, the government's view of the fraud statutes and New York's unauthorized practice rules stretches those laws too far, beyond the bounds of the statutory language, the appropriate application of state criminal statutes in federal court, and the First Amendment. Moreover, the timing of the government's unprecedented application of these laws to the defendant's conduct creates an inescapable impression that this prosecution is payback for the unlicensed advocate's meddling in cases that personally affect the assigned assistant U.S. attorneys. The indictment should therefore be dismissed in its entirety.

If the indictment is not dismissed, the court must examine the circumstances of the defendant's uncounseled statement to law enforcement and the sweeping search warrants, which purported to authorize seizure of virtually every scrap of paper and every electronic communication the defendant ever possessed. The warrants were not only overbroad, but they were not supported by probable cause and their fruits should be suppressed.

## FACTS

### A.    Background

At 56, defendant Christopher Reese is well-known in the New York City legal community as a federal jailhouse lawyer with a number of fraud-related federal

convictions. The latest conviction was based on a jury trial that concluded on March 29, 2013. Mr. Reese was convicted on all four counts of an S-2 superseding indictment. On July 20, 2014, the Hon. Victor Marrero sentenced Mr. Reese to 108 months' imprisonment and ordered him to make restitution in the amount of $68,985.55. *See U.S. v. Reese*, 12 Cr. 629 (VM) (S.D.N.Y.), ECF Nos. 108, 142. On April 21, 2022, Mr. Reese was released from incarceration and began a three-year term of supervised release scheduled to end on August 20, 2023.

**B.    Mr. Reese's prior related violations of supervised release**

On March 31, 2022, the U.S. Probation Office filed a violation report against Reese, which was amended on May 4, 2022 and August 31, 2022. The final violation report, attached hereto as Exhibit A, charged Mr. Reese with the following violations of supervised release:

(1)    Failure to pay restitution in the amount of 15% of gross monthly income between September 21, 2020 to about March 2022;

(2)    Association with known convicted felons from April 16, 2021 to March 2022;

(3)    Association with known convicted felons from March 16, 2022 to April 28, 2022;

(4)    Failure to follow the instructions of the probation office from on or after March 16, 2022 to about April 28, 2022;

(5)    Association with a known convicted felon in August 2022;

(6)    Failure to follow the instructions of the probation office on or about August 2022.

Ex. A: Final Violation Report at 3-4.[1]

On September 9, 2022, Mr. Reese pled guilty to Specifications 3 and 5, related to associating with known felons, and the remaining specifications were dismissed. *See U.S. v. Reese*, 12 Cr. 629 (VM), ECF No. 306.  After the plea, the government filed a sentencing memorandum arguing that Mr. Reese "has taken hundreds of thousands of dollars from defendants and their family members, who were in a vulnerable position, and susceptible to Reese's suggestion that he could achieve a better outcome than their lawyers…. Reese's continued unlicensed practice of law significantly burdens the courts." *Id.* ECF No. 304. Judge Marrero sentenced Mr. Reese to eight months' incarceration followed by one year of supervised release. *Id.* ECF No. 306. Mr. Reese appealed the judgment entered against him by Judge Marrero and was represented on appeal by Lawrence Gerzog, Esq. *See U.S. v. Reese*, 22-2184-cr, ECF Nos. 59, 60 (2d Cir. Jan. 31, 2024) (order and notice appointing Mr. Gerzog as counsel for Mr. Reese). The Court of Appeals affirmed the judgment in a summary order dated March 26, 2024 and the mandate issued on May 20, 2024. *Id.* ECF Nos. 118, 121.

### C.    Allegations in the Indictment

The indictment in the instant case was unsealed against Mr. Reese on June 2, 2024. ECF No. 2 (hereinafter "Ind."). According to the Indictment, Mr. Reese engaged in a

---

[1] Exhibits cited herein refer to exhibits to the Attorney Affirmation of Zachary Margulis-Ohnuma dated December 16, 2024, ECF No. 60. Citations to "ECF" are to the instant district court docket. Citations to other dockets are preceded by their respective captions and docket numbers and will identify the court they were brought in.

"Legal-Services Fraud Scheme" for "approximately 30 years." Ind. ¶ 4. Mr. Reese "style[d] himself a legal assistant" and assisted federal criminal defendants and their families. This assistance included helping to draft *pro se* filings and submitting those filings on behalf of the defendants he was assisting. Mr. Reese was paid by the defendants or their families for his work on their behalf. The money was sometimes paid to another person, an unindicted co-conspirator identified in the Indictment as "CC-1." Ind. ¶ 3. Some of the court filings were submitted to the Thurgood Marshall Courthouse at 40 Foley Square, which is one of three federal courthouses in New York City.

The Indictment specifies four different individuals and their families who were allegedly targeted in the scheme. The narrative section of the Indictment (which is not incorporated in any of the counts) appears to allege that Mr. Reese's conduct was fraudulent or unlawful for three separate reasons: (1) Mr. Reese over-promised favorable results, Ind. ¶¶ 1, 7, 16, 19; (2) Mr. Reese worked without the supervision of a lawyer and offered services "only a lawyer is authorized to provide," Ind. ¶ 1, and (3) Mr. Reese "disguise[d] the authorship of the filings" by submitting them as *pro se,* Ind. ¶ 1. In at least one case, Mr. Reese is further accused of failing to honor a "full money-back guarantee" he allegedly provided to an inmate's family. Ind. ¶¶ 12-13.

In addition, the Indictment alleges that Mr. Reese lied to his U.S. Probation Officer about his assets and income in order to avoid paying restitution that became due after he was released from custody in August 2020. In fact, according to the Indictment, "after he began serving supervised release in or about 2020, Reese's fraudulent legal-services business brought in hundreds of thousands of dollars[.]" Ind. ¶ 28. In addition to making

false oral statements, Mr. Reese allegedly emailed a false financial statement to Probation on March 3, 2022. The financial statement claimed no assets when, according to the Indictment, Mr. Reese in fact had an account with a mobile payment service that had a positive balance at the time. Ind. ¶ 40.

The Indictment charges five counts:

- wire fraud conspiracy and wire fraud based on "false and fraudulent statements, representations and promises to federal inmates, and their family members and friends, in order to obtain money from those individuals for unlicensed legal services" from 2020 to 2023 (Counts One and Two);

- unauthorized practice of law in a federal enclave in 2023 in violation of New York Judiciary Law §§ 484 and 485-a and the Assimilative Crimes Act, 18 U.S.C. § 13 (Count Three);

- false statements (including the false financial report) to the U.S. Department of Probation from 2022 through 2023 in violation of 18 U.S.C. § 1001 (Count Four); and

- money laundering from 2021 to 2022 in connection with the fraud scheme alleged in Counts One and Two (Count Five).

### D.    Procedural History

Mr. Reese turned himself in to the Department of Probation on April 18, 2024 in connection with a violation report in the underlying case against him, Docket No. 12 Cr. 629 (VM). He was presented to the Hon. Katherine Parker that day and consented to detention without prejudice. A bail hearing was held the following day and Mr. Reese was ordered detained. He remains detained based on the supervised release violation and a bail appeal hearing is scheduled before Judge Marrero on January 17, 2025.

The Indictment in this case was unsealed on June 24, 2024. On July 11, 2024, struggling to communicate with his court-appointed attorney, Mr. Reese filed a *pro se* motion seeking disqualification of the prosecutors assigned to the case, Derek Wikstrom

5

and Timothy Josiah Pertz and dismissal of the case on the grounds of vindictive prosecution. ECF No. 9.[2]

### E.    The Search Warrants

On October 26, 2023, Magistrate Judge Katherine H. Parker issued a search warrant for emails under Docket No. 23 Mag. 6977 (S.D.N.Y.), based on the application of Special Agent Sean Smyth, an investigator with the United States Attorney's Office for the Southern District of New York ("USAO-SDNY") (hereinafter the "Email Warrants").[3] The Email Warrants authorized the search and seizure of records associated with the email addresses reesearch@yahoo.com and assatasays@aol.com held by Apple, Google, Yahoo and Microsoft. *See generally* Ex. B: Email Warrants. The "Subject Offenses" were defined in the Email Warrants as:

> Title 18, United States Code, Sections 7 & 13(a) (unauthorized practice of law under the Assimilative Crimes Act and N.Y. Jud. L. §§ 478, 484, 485 & 485-a), 371 (conspiracy to defraud the United States, regarding a scheme to defraud courts of the United States by making purported *pro se* filings in the names of defendants who did not author the papers), 1343 & 1349 (wire fraud, and wire fraud conspiracy, regarding a scheme to defraud criminal defendants and their families of money for the provision of unauthorized legal services) and 2 (aiding and abetting same) (the "Subject Offenses")

*Id.* ¶ 4.

---

[2] Mr. Reese authorized me to orally withdraw his filing at the conference on October 16, 2024. The instant motions replace Mr. Reese's *pro se* requests. *See* ECF No. 44 (scheduling order directing the defense to submit a "single, consolidated motion containing all its requests for pretrial relief, including issues previously raised by *pro se* filings.").

[3] A copy of the Email Warrants application and orders is attached hereto as Exhibit B.

On April 9, 2024, Magistrate Judge Taryn A. Merkl issued separate search warrants, under Docket No. 24 Mag. 288, based on the application of Agent Smyth (hereinafter the "Apartment Warrants").[4] The Apartment Warrants authorized law enforcement to search the primary residence of Mr. Reese, as well as the home of his niece, Assata Rhodes and all electronic devices found on the premises or the person of either Mr. Reese or Ms. Rhodes. The Subject Offenses of the Apartment Warrants were the same as those listed in the Email Warrants, with the addition of 18 U.S.C. "1001 (willfully false statements to the U.S. Probation Office)." Ex. C: Apartment Warrants ¶ 8.

### F.    Mr. Reese's Statement to Law Enforcement

On April 10, 2024, Special Agent Sean Smythe of the U.S. Attorney's Office for the Southern District of New York and other members of his team executed the warrant at Mr. Reese's home. While executing the warrant, Agent Smythe and another person (presumably another special agent) interviewed Mr. Reese. A copy of the interview was turned over in discovery and can be found at USAO_00077616: Recording of Interview. Based on the interview tape, no one present advised Mr. Reese of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). *Id.*[5] Mr. Reese made several statements in response to questions from law enforcement during the recorded interview.

---

[4] A copy of the Apartment Warrants application and orders is attached hereto as Exhibit C.

[5] Mr. Pertz stated on the record at the conference on October 1, 2024 that "agents searched his home and conducted a Mirandized interview with him in his home out of custody." Oct. 1, 2024 Tr. at 7:14-16. The basis for Mr. Pertz's claim that the statement was Mirandized is not clear given that no *Miranda* warnings appear on the recording provided in discovery.

## ARGUMENT

The allegations in all but Count Four of the Indictment flow from the notion that by providing legal assistance to inmates Mr. Reese was violating New York law. But that legal principle is flawed: Mr. Reese did not violate the letter of the New York statute prohibiting the unlicensed practice of law. Even if he did, he could not be prosecuted in federal court because the federal courts have found that violations of state unlicensed-practice statutes in federal enclaves are preempted by federal law regulating attorneys. There is no additional allegation that Mr. Reese falsely represented that he was a lawyer; the Indictment does not allege any particular false statements other than puffery or overly-optimistic statements about future outcomes, which are insufficient in themselves to support a fraud claim, which in turn is a necessary predicate for the money laundering conspiracy count. If these counts were sufficient, they would raise significant First and Sixth Amendment concerns.

Next, it appears that the entire Indictment is the product of the government's frustration with Mr. Reese, which came to a head when he assisted a *pro se* litigant in publicly accusing the assistant U.S. attorneys assigned to the case of making false statements in a court filing. If the Indictment was filed in retaliation for Mr. Reese's role in publishing negative information about the assistants, it must be dismissed as vindictive. Even if it was not actually vindictive, the prosecutors' continued participation raises an appearance of impropriety as well as potential ethical pitfalls; the Court should exercise its discretion to disqualify them from prosecuting the case if the Indictment survives and they are unwilling to withdraw voluntarily.

**I.      Count Three of the Indictment must be dismissed.**

Count Three of the Indictment purports to set forth a violation of the New York

Judiciary Law in a federal enclave, which, the government maintains, is enforceable

through the Assimilative Crimes Act, 18 U.S.C. § 13 ("ACA"). The operative portion of the

Indictment (which does not incorporate by reference any other language in the

Indictment) reads as follows:

> In or about 2023, in the Southern District of New York,
> within and upon a place reserved and acquired for the use of
> the United States, and under the exclusive jurisdiction
> thereof, to wit, the Thurgood Marshall United States
> Courthouse, 40 Foley Square, New York, New York,
> CHRISTOPHER REESE, a/k/a "Christopher Eugene Thomas,"
> the defendant, unlawfully, willfully and knowingly **made it a
> business to practice for another as an attorney** in any
> court and before any magistrate, and falsely **held himself
> out as a person who can provide services that only
> attorneys are authorized to provide**; and caused another
> person to suffer monetary loss or damages exceeding one
> thousand dollars and other material damage resulting from
> impairment of a legal right to which that other person was
> entitled, to wit, REESE, who was not licensed to practice law
> in New York State, offered and provided legal research and
> writing services to parties in criminal cases heard in the
> Thurgood Marshall United States Courthouse, and drafted
> and caused a legal brief[6] to be filed before the United States
> Court of Appeals for the Second Circuit on behalf of a party
> without the supervision of a licensed attorney, and charged a
> party and a party's family more than $1,000 for these
> unlicensed legal services.
>
> (Title 18, United States Code, Sections 7, 13 and 2)

---

[6] The "legal brief" referenced is described in ¶ 17 of the Indictment and was allegedly
filed on behalf of "Inmate-2." Upon request, counsel for the government confirmed this
inference and identified the specific brief in discovery. *See* Nov. 7, 2023 email from
AUSA Josiah Pertz to Zachary Margulis-Ohnuma (on file with this office and available to
the Court upon request).

(New York Judiciary Law, Sections 484 & 485-a)

ECF No. 2: Indictment at 16 (emphasis added).

The government is wrong in both respects: as explained below, the New York Judiciary Law sections cited were neither violated by Reese's alleged conduct nor assimilated into federal law.

A. **The conduct alleged in the Indictment does not set forth a violation of New York Judiciary Law § 484, which is a prerequisite for criminal liability under § 485-a.**

New York Judiciary Law § 484 is a long wall of text entitled "None but attorneys to practice in the state" that sets forth in detail activities that no one other than a licensed attorney is permitted to "receive, directly or indirectly, compensation for" and a list of circumstances where the prohibitions do not apply. N.Y. Jud. L. § 484.[7] The list (which is set out in the footnote) is extensive including, for example, particular papers that must be "prepared" by an attorney, including state court pleadings. *See infra,* f.n. 3. The list of

---

[7] The portion of the provision setting forth the prohibitions states:

> No natural person shall ask or receive, directly or indirectly, compensation for ***appearing*** for a person other than himself as attorney in any court or before any magistrate, or for ***preparing*** deeds, mortgages, assignments, discharges, leases or any other instruments affecting real estate, wills, codicils, or any other instrument affecting the disposition of property after death, or decedents' estates, or ***pleadings*** *of any kind in any action brought before any court of record in this state*, or ***make it a business to practice*** for another as an attorney in any court or before any magistrate unless he has been regularly admitted to practice, as an attorney or counselor, in the courts of record in the state[.]

N.Y. Jud. L. § 484 (emphasis added).

prohibited actions says nothing about preparing, drafting, or submitting motions or briefs on behalf of a *pro se* criminal defendant. The provision says nothing about federal court.

The list of prohibited activities does, however, include making "it a business to practice for another as an attorney in any court or before any magistrate unless he has been regularly admitted to practice, as an attorney or counselor, in the courts of record in the state." *Id*. The indictment appears to rely on this latter clause. Ind. ¶ 39 (defendant "made it a business to practice for another as an attorney in any court and before any magistrate").

Section 484 contains a number of exceptions not applicable here. *Id*. One of the exceptions, for attorneys admitted *pro hac vice*, specifically applies to attorneys admitted *pro hac* "in the State of New York within the limitations prescribed in the rules of the court of appeals." N.Y. Jud. L. § 484(4). This *pro hac* clause was added in 2013. *See* Bill Jacket, 2013 Assembly Bill 197.

Section 484 is enforceable via § 485, which defines a misdemeanor, and via the other section cited in the Indictment, § 485-a, which defines a felony and also only became effective in 2013.[8] *See* McKinney's N.Y. Jud. L. § 485-a; Bill Jacket, 2013 Assembly Bill 197 (purpose of amendment to § 485-a was "to clarify what constitutes the unauthorized practice of law" and provide "greater specificity").

Section 485-a states, in relevant part, that:

---

[8] These portions of the Judiciary Law are sometimes referred to collectively as the New York's unauthorized practice of law ("UPL") rules or statutes. *See, e.g., Upsolve, Inc. v. James*, 604 F.Supp.3d 97, 105 (S.D.N.Y. 2022) (Crotty, D.J.) (describing New York's UPL scheme and the "elusive endeavor" of defining the practice of law).

> Any person who violates the provisions of [§ 484] of this article is guilty of a class E felony when he or she: (1) *falsely holds himself or herself out as a person licensed to practice law in this state, a person otherwise permitted to practice law in this state, or a person who can provide services that only attorneys are authorized to provide*; and (2) causes another person to suffer monetary loss or damages exceeding one thousand dollars or other material damage resulting from impairment of a legal right to which he or she is entitled.

N.Y. Jud. L. § 485-a (emphasis added).

The Indictment appears to reference solely the third disjunctive prong of § 485-a(2), in that it specifies that Reese is accused of "falsely [holding] himself out as a person who can provide services that only attorneys are authorized to provide[.] Ind. at 16, ¶ 39.

As to the prohibited activities detailed in § 484, the Indictment states only that Reese "made it a business to practice for another as an attorney in any court and before and magistrate". *Id.*

These allegations are insufficient for at least three reasons. First, "the Judiciary Law repeatedly makes clear that the terms 'court of record' and 'court not of record' *both* refer to state courts." *SGM Holdings LLC v. Andrews*, No. 15 CIV. 8142 (VM), -- F.Supp.3d --, 2024 WL 3674820 (S.D.N.Y. Aug. 2, 2024) (Marrero, D.J.), *citing* N.Y. Jud. L. § 3 (the term "court" refers only "to a court of record or a court not of record, duly organized and existing under the laws of the state as a part of the judicial system of the state").[9]

---

[9] We acknowledge that elsewhere in the SGM opinion, which specifically references the instant indictment, *see SGM Holdings LLC v. Andrews*, 2024 WL 3674820 at *25 & f.n. 34, Judge Marrero appears to assert that "any court" in Jud. L. § 484 is broad enough to encompass federal courts for purposes of the ACA, *despite* the definition of "court" in Jud. L. § 3. *SGM Holdings LLC v. Andrews*, 2024 WL 3674820 at *25. However, we believe this view is too broad to make sense and was *dicta* in Reese's case: if "any court"

Accordingly, the statute criminalizing unauthorized practice of law in New York courts does not reach practice in federal courts, even if they lie geographically in the state.

Second, there are no factual allegations to support the notion that Reese "made it a business to *practice for another as an attorney*[.]" While the Indictment may sufficiently describe a business, and that business provided legal assistance, there is no allegation that Reese ever claimed to be an attorney or that he could provide services that an attorney could provide. He never attempted to appear in court on another's behalf. The allegations are limited to him providing assistance in writing *pro se* materials—*i.e.* materials that explicitly are *not* written by an attorney. Indeed, some of the materials submitted included requests for an attorney, Ind. ¶ 17, 25—surely even the government would not argue that helping someone request a lawyer amounts to acting as a lawyer.

Third, there is no allegation that Reese held himself out as a person who "can provide services only attorneys are authorized to provide." The services alleged in the Indictment all related to communicating with the courts explicitly as a non-attorney, by drafting *pro se* briefs and submitting them through the Pro Se Office email. The detailed descriptions of Reese's interactions with his customers in the Indictment, ¶¶ 10-26, do not allege that he did or promised to do something that only an attorney could do. To the contrary, the Indictment explicitly alleges that Reese interacted with and attempted to assist one of his customer's attorneys, attempted to assist the customer in obtaining a new

referred to federal courts, then federal court *pro hac vice* admissions would be banned in New York unless the person was already a New York lawyer, a result that would be violated on a daily basis in this District.

(presumably more competent or zealous) attorney, and forthrightly told the attorney that he, himself, was not an attorney. Ind. ¶ 25.

***

The government does not and cannot allege "essential facts constituting" its conclusory allegations that Reese either made it a business to practice for another as an attorney or held himself out as a person who could provide services that only attorneys can provide; therefore the Indictment is defective and must be dismissed pursuant to Rules 7(c) and 12(b)(3)(B)(v) of the Federal Rules of Criminal Procedure.

### B.    The allegations in the Indictment consist of speech protected by the First Amendment.

As discussed above, the New York statutes criminalizing unauthorized practice of law are narrow; they reach only people in Reese's position who both make it a business to practice as an attorney in court *and* falsely hold themselves out as capable of providing services that only an attorney can provide. They specify certain specific documents— specific "instruments" and state court pleadings—that cannot be "prepared" by non-lawyers. However, if, as the government proposes here, liability were to stray beyond such narrow boundaries, the statute would violate the First Amendment. In other words, if Count 3 is not dismissed for the reasons discussed above, the New York UPL rules would be unconstitutional *as applied* because they amount to a content-based restriction on Reese's speech in violation of the First Amendment of the U.S. Constitution.

In a recent case, Judge Paul Crotty sustained an as-applied challenge to New York's UPL rules and found that "the act of giving legal advice" was "pure verbal speech" so that any regulation of it would be subject to strict scrutiny under the First Amendment. *See*

14

*Upsolve, Inc. v. James*, 604 F.Supp.3d 97, 113 (S.D.N.Y. 2022). In that case, a non-profit sought to train non-lawyers to provide free legal advice to low-income debtors. Judge Crotty set aside lower court precedents, all of which upheld the UPL rules against facial challenges or were clearly conduct, and not pure speech as in *Upsolve*. Applying the Supreme Court's decision in *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010), he concluded that the non-lawyer *Upsolve* plaintiffs' proposal to give legal advice to people was "content-based speech" because its regulation under the UPL depended on what was said. "[B]ecause the UPL rules do not simply have an effect on speech, but are directed at certain content and are aimed at particular speakers, they are content-based." *Upsolve v. James*, 604 F.Supp.3d at 115 (cleaned up).

Here, at its core, what Reese is accused of in Count Three is also content-based speech. If, say Reese took money to help a client write a love letter to a judge presiding over her case, and the letter made no legal points, there seems to be little question that would not violate the UPL statutes. Reese is being prosecuted under the UPL not because he took money, not because he made representations to clients, not because he sent emails to the various *pro se* clerks offices, but because he provided his clients with legal arguments to present in court. While we do not think this amounts to the practice of law in the first place, it surely amounts to speech—"the conduct triggering coverage under the statute consists of communicating a message," *Holder v. Humanitarian L. Project*, 561 U.S. at 28— and the UPL statutes ban that speech solely based on its content. Accordingly, strict scrutiny applies. *See also Upsolve v. James*, 604 F.Supp.3d at 115-17 (explaining why strict

15

scrutiny applies to New York's UPL even though it may be characterized as a licensing scheme).

Since strict scrutiny applies to the allegations against Reese, the government is required to show that its proposed application of New York's criminal UPL statutes "furthers a compelling interest and is narrowly tailored to achieve that interest." *Upsolve v. James*, 604 F.Supp.3d at 117, *quoting Reed v. Town of Gilbert*, 576 U.S. 55, 171 (2015). The government's burden is heavy: the statute at issue "must use the least restrictive means to achieve its ends." *Evergreen Ass'n, Inc. v. City of New York*, 740 F.3d 233, 246 (2d Cir. 2014).

The government cannot meet its burden here because, as in *Upsolve*, interpreting the UPL laws to restrict Reese's provision of legal advice is *not* sufficiently tailored to prevent an identifiable harm. Based on the telling in the Indictment, the government's interpretation of the statute seems more concerned with preventing Reese from "Attack[ing] the Attorney Client Relationship." Ind. at 9, *i.e.* protecting licensed attorneys from having to answer well-informed complaints from their clients. Interpreting the statutes to prohibit the provision of legal advice—as the government does here—makes them overbroad and not at all tailored to promoting a legitimate government interest or preventing a specific evil. Accordingly, the government's interpretation of the New York statutes must fail and Count Three must be dismissed.

### C.    The government's proposed application of the ACA is preempted by federal law

Count Three fails as a matter of law for an additional reason: the Assimilative Crimes Act does not apply where, as here, a federal criminal law governs the same

"wrongful behavior" in the enclave. *Lewis v. U.S.*, 523 U.S. 155, 165 (1998); *see also, e.g.,*

*U.S. v. Dat Quoc Do*, 994 F.3d 1096 (9th Cir. 2021) (reversing federal conviction based on

assimilated Oregon weapons law). The government relies on 18 U.S.C. § 13, which makes

certain (but by no means all) state crimes punishable in federal court. Specifically, the

ACA "assimilates"—*i.e.* makes punishable in federal court—only states crimes "not made

punishable by any enactment of Congress[.]" 18 U.S.C. § 13(a). "[A]ssimilation is

permitted only where necessary to fill gaps in federal criminal law on federal enclaves."

*U.S. v. Do*, 994 F.3d at 1098.

In *Lewis v. U.S.*, 523 U.S. 155 (1998), the Supreme Court explained that the

exception to assimilation for crimes not made punishable by "any enactment" was broader

than federal crimes that "share[] the same statutory elements as the relevant state law."

*Id.* at 155-156 (syllabus), 163. Rather, the Supreme Court set forth a two-part test to

determine whether the ACA assimilates any particular state criminal law:

> [T]he ACA's language and its gap-filling purpose taken
> together indicate that a court must first ask the question that
> the ACA's language requires: Is the defendant's "act or
> omission ... made punishable by *any* enactment of Congress."
> 18 U.S.C. § 13(a) (emphasis added). If the answer to this
> question is "no," that will normally end the matter. The ACA
> presumably would assimilate the statute. If the answer to the
> question is "yes," however, the court must ask the further
> question whether the federal statutes that apply to the "act or
> omission" preclude application of the state law in question,
> say, because its application would interfere with the
> achievement of a federal policy, because the state law would
> effectively rewrite an offense definition that Congress
> carefully considered, or because federal statutes reveal an
> intent to occupy so much of a field as would exclude use of
> the particular state statute at issue.

*Id*. at 165 (citations omitted). The court continued to explain that "the Act will not apply where both state and federal statutes seek to punish approximately the same wrongful behavior—where, for example, differences among elements of the crimes reflect jurisdictional, or other technical, considerations, or where differences amount only to those of name, definitional language, or punishment." *Id*.

Our research reveals only a single appellate case assessing whether a state unauthorized practice of law statute should be assimilated. In a 1977 case, the Seventh Circuit found that Wisconsin's law banning unauthorized practice of law was not punishable under the ACA: "We believe the Assimilated Crimes Act is not applicable here. We find nothing to suggest that Congress intended by the Act to make state penal statutes applicable to the practice of law in federal courts." *U.S. v. Peterson*, 550 F.2d 379, 384 (7th Cir. 1977) (reversing conviction dismissing indictment "as failing to allege an offense against the United States").

The reasoning of *Peterson* applies here and is consistent with *Lewis*.

In this case, as in *Peterson*, 28 U.S.C. § 1654, which provides that cases in federal court may be pled and conducted "personally or by counsel," and 18 U.S.C. § 401, which provides punishment for contempt of court for misbehavior in the presence of the court, pre-empt the application of Judiciary Law §§ 484 and 485-a through the Assimilative Crimes Act. Section 401 indisputably passes the first prong because "unauthorized practice of law may be deemed 'misbehavior' punishable as criminal contempt pursuant to 18 U.S.C. § 401(1)." *Riddle v. Ruble-Ruparel*, No. CIV.A. 6:04620DCR, 2005 WL 1866052 (E.D. Ky. Aug. 3, 2005) (citing cases); *see also, e.g.*, *U.S. v. Herrera*, 252 F.3d 1356 (5th Cir.

18

2001) (upholding conviction under § 401 for unauthorized practice of law in federal court).

Since unauthorized practice of law is punishable under § 401(1) in these circumstances, the Court must go on to query whether the federal statute precludes application of the state statute. Logic and equity counsel that it does: the federal statutory scheme creates a broad remedy for "misbehavior" based on the *federal* court's assessment of conduct in federal court. It makes no sense to apply *state* standards or rules—which, in any event, are too narrow to reach this conduct (as discussed above)—to misbehavior in *federal* court. The two statute provisions clearly punish "approximately the same wrongful behavior," *Lewis v. U.S.*, 523 U.S. at 165, and the differences between them are technical. As the court in *Peterson* concluded, the government here has alleged the wrong crime because Congress never intended to assimilate state unauthorized-practice-of-law rules into the federal criminal code. *U.S. v. Peterson*, 550 F.2d at 384.

## II.    The fraud and money laundering counts must be dismissed because no fraud is alleged.

While it may be true that "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime[,]" *U.S. v. Tramunti*, 513 F.2d 1087, 1113 (2d Cir. 1975), "when the definition of an offense includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species,—it must descend to particulars." *U.S. v. Pirro*, 212 F.3d 86, 93 (2d Cir. 2000), *quoting Russell v. U.S.*, 369 U.S. 749, 765 (1962) (internal quotations and citations omitted). "Undoubtedly, the language of the statute may be used in the general description

19

of an offense, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." *Russell v. U.S.*, 369 U.S. at 765 (1962). In other words, an indictment must "contain some amount of factual particularity to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury." *U.S. v. Upton*, 856 F.Supp. 727, 738 (E.D.N.Y. 1994), *citing Russell v. U.S.*, 369 U.S. at 765.

Counts One and Two of the Indictment present a rare case where language drafted by the government and voted on by the grand jury fails "to descend to particulars" and does not provide adequate "factual particularity to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury." As to Count One, it is impossible to discern what acts Reese is alleged to have agreed to; as to Count Two, it is impossible to discern what acts Reese is alleged to have committed. Accordingly, the Indictment must be dismissed.

Both counts recite the language of the wire fraud statute, then state that Reese "agreed with others" (Count One) and "engaged in a scheme" (Count Two):

> to make false and fraudulent statements, representations and promises to federal inmates, [and] their family members and friends, in order to obtain money from those individuals for unlicensed legal services.

Ind. ¶¶ 37, 38.

But neither count incorporates the facts set out earlier in the Indictment, and therefore this factual assertion—that Reese "engaged in a scheme" to lie to inmates and their families to obtain money for unlicensed legal services—is the *only* one the

government relies on. *See U.S. v. Hooker,* 841 F.2d 1225, 1231 (4th Cir. 1988) (factual allegations elsewhere in an indictment are not incorporated where the count at issue does not expressly incorporate them; each count of indictment must be read independently). But it's not enough to describe facts generally alleging a crime: it is impossible to know from the Indictment what the false and fraudulent statements were, how the wires were used, or what the fraudulent scheme consisted of. It is not clear whether Reese is accused of impersonating a lawyer or promising particular outcomes to clients or their families or something else. As discussed above, merely performing legal work for money as a non-lawyer cannot amount to scheme to defraud because the New York UPL rules are narrow and specific. The Indictment therefore does not meet even the minimal pleading requirements of Rule 7 of the Federal Rules of Criminal Procedure and the Due Process Clause of the Fifth Amendment.

The insufficient pleading in Counts One and Two matches a count dismissed in the Eastern District in 1995. In *U.S. v. Ashley*, 905 F.Supp. 1146 (E.D.N.Y. 1995), Judge Hurley dismissed a bare-bones count purporting to allege wire fraud because "in support of the allegation that [defendant] 'devised a scheme and artifice to defraud NatWest and to obtain money and property by means of false and fraudulent pretenses, representations and promises,' (Indictment ¶ 34), no details [were] provided." *Id.* at 1159. The failure to assert allegations other than the name of the victim and the approximate timeframe proved fatal to the wire fraud count: "What the 'scheme and artifice to defraud', or the 'false and fraudulent pretenses, representations and promises' referred to in the indictment were, is

left to speculation." *Id.* (cleaned up). The same is true here. Counts One and Two must be dismissed.

**III. The Indictment should be dismissed because it appears to be in retaliation against Mr. Reese's public criticism of the assigned assistant United States attorneys; in the alternative, the case should be re-assigned to prosecutors who do not have a personal interest in the outcome.**

The defense adopts the argument previously submitted *pro se* by Mr. Reese: the timing of actions taken against him just after he is alleged to have accused the assigned U.S. attorneys of misconduct gives rise to an inference of vindictiveness. *See* ECF No. 9. Accordingly, we respectfully submit that the Indictment should be dismissed, or, in the alternative, the assigned prosecutors disqualified from representing the government.

**A. Facts Supporting the Inference of Vindictiveness.**

On July 11, 2024, Mr. Reese (who at that time was struggling with his appointed counsel) submitted an eight-page, electronically-signed *pro se* motion setting forth, *inter alia*, facts supporting his motion to dismiss based on vindictive prosecution and for disqualification of the assigned assistant U.S. attorneys. ECF No. 9. According to the motion, Reese began assisting federal inmates at Westchester County Correctional Facility starting in approximately early 2021. *Id.* at 3. Many of the Westchester inmates, Reese avers, were prosecuted by the same prosecutors handling this case, Timothy Josiah Pertz and Derek Wikstrom. *Id.* After assisting a number of Westchester inmates, Reese was directed by Probation not to have contact with convicted felons even in connection with his employment. *Id.*

### 1. AUSA Derek Wikstrom believes that Reese is responsible for accusing him of misconduct in filings in *U.S. v. Wayne Hicks*.

On February 3, 2022, the court docketed a motion that was electronically signed by a defendant named Wayne Hicks in which Mr. Hicks accused Mr. Wikstrom of making a misrepresentation to the court in an affirmation submitted under penalty of perjury. *See U.S. v. Wayne Hicks*, 21 Mag. 9511, ECF No. 18 at 2 (S.D.N.Y. Feb. 3, 2022). Specifically, Mr. Wikstrom, according to the *pro se* motion, falsely suggested in an affirmation seeking a continuance of Hicks's preliminary hearing date that the parties were engaged in plea discussions, when, in fact, no such negotiations were taking place. *Id.* ("at no time has defense counsel informed Defendant that any such discussions were underway and has, in no uncertain terms, suggested that no plea negotiations have commenced"). The allegedly false affirmation is found at ECF No. 9 on the *Hicks* docket, 21 Cr. 293 (S.D.N.Y. Nov. 3, 2021). Hicks went on in the motion to generally accuse the government of making "misrepresentations to the Court regarding ongoing plea negotiations." *U.S. v. Wayne Hicks*, 21 Mag. 9511, ECF No. 18 at 2 (S.D.N.Y. Feb. 3, 2022).

A few days later, Mr. Hicks filed another electronically-signed *pro se* motion, again accusing the government of making "material misrepresentations to the court by the government in collusion with defense counsel." *See U.S. v. Wayne Hicks*, 21 Mag. 9511, ECF No. 20 at 2. (S.D.N.Y. Feb. 9, 2022). This motion was included in discovery sent to our office, indicating the government believes that it was submitted by Mr. Reese. *See* USAO_00050191.[10] The government also suggested that Mr. Reese was responsible for Mr.

---

[10] The discovery version of the docket entry is on file with our office an available upon request.

Hicks statement in the motion that "the Government (with counsel's acquiescence) has repeatedly informed the Court that an extension of time to return an indictment was needed to facilitate plea negotiations – although no plea negotiations were underway." *Id.* at 2.

### 2. AUSAs Wikstrom and Pertz appear in Mr. Reese's underlying case.

Several weeks after Mr. Reese accused him of misconduct, Mr. Wikstrom entered an appearance in the pending case against Mr. Reese, 12 Cr. 629 (S.D.N.Y. March 31, 2022) (VM), in which Mr. Reese was serving four-year of supervised release. *See U.S. v. Reese*, 12 Cr. 629 ECF No. 290 (S.D.N.Y. March 31, 2022) (VM) (Wikstrom Notice of Appearance). That day, Mr. Wikstrom submitted a response opposing a request by Mr. Reese for early termination of his supervised release. *Id.* ECF No. 291. The same day, a supervised release violation report against Mr. Reese was also submitted under seal. *See* Ex. A at 2 (referencing the original March 31, 2022 violation report). Mr. Pertz appeared on behalf of the government on August 31, 2022. *Id.* ECF No. 302.

### 3. AUSA Wikstrom unsuccessfully accuses Mr. Reese of filing a motion to withdraw a guilty plea against the wishes of a defendant.

In another case in Westchester, Mr. Wikstrom opposed a *pro se* motion by a defendant to withdraw his guilty plea by claiming that Mr. Reese's alleged involvement in the motion suggested it was invalid. *See U.S. v. Jermaine Lightfoot*, 21 Cr. 463 (CS), ECF No. 74 (S.D.N.Y. August 26, 2022). The defendant in that case, Jermaine Lightfoot, allocuted to his guilt before a magistrate judge on August 17, 2022. *See id.* ECF No. 74-7. Six days later, a motion to vacate the plea and appoint new counsel was docketed. *Id.* ECF

No. 70. In a letter to the Court, AUSA Wikstrom questioned Mr. Lightfoot's application to withdraw his plea, suggesting that he was somehow coerced into making it by Mr. Reese. The government's response critically described Mr. Reese's involvement in a case that was, at least on paper, unrelated to Mr. Reese and could indeed become part of the evidence in the instant case. *Id*. ECF No. 74. Mr. Wikstrom wrote:

> Given these similarities, Reese's suspected prior filing in this case, Reese's history of filings alleging a breakdown in attorney-client relationships, and the suddenness of Lightfoot's expression of positions contradictory to sworn statements he made days earlier, the Government believes that the Motion is the work of Reese – or, at very least, someone with an extremely similar *modus operandi*. It is unclear what role, if any, Lightfoot had in the decision to file the Motion and what facts, if any, he shared with its author.

*Id.* at 4.

Judge Seibel granted the motion to withdraw the plea. *See U.S. v. Jermaine Lightfoot*, 21 Cr. 463 (CS), September 20, 2022 Docket Entry.

On April 9, 2024, after Mr. Reese had already served an additional year in federal prison based on the 2022 supervised release violation, a federal agent working directly for the U.S. attorney's office obtained search warrants for Mr. Reese's home, his person, his electronics and the home, person and electronics of his cousin, Assata Rhodes. *See infra.* The searches were executed on April 16. A violation warrant was issued that day and Mr. Reese turned himself into Probation on a new violation of supervised release on April 18, 2024. Mr. Pertz handled the presentment on behalf of the government. *U.S. v. Reese*, 12 Cr. 629 (VM), ECF No. 340 (S.D.N.Y.) (minute entry only). He has been detained since. On May 3, 2024, the government filed a motion to re-sentence Mr. Reese on the underlying

2013 jury verdict pursuant to 18 U.S.C. § 3614. *Id.* ECF No. 342. The motion was supported by a sworn declaration submitted by AUSA Pertz. *Id*. ECF No. 342-1. That motion is pending.

The instant case was indicted on June 24, 2024 and Mr. Wikstrom entered his appearance two days later. ECF No. 3. Mr. Pertz has not filed an appearance in this case but began placing documents on the docket on July 15, 2024. *See* ECF No. 12 (related case notification).

### B.    Standards for Vindictive Prosecution

One can only imagine AUSA Wikstrom's frustration at having a non-lawyer question the routine practice of agreeing with defense attorneys to delay preliminary hearings and disrupting a carefully negotiated guilty plea that was most likely efficient and favorable to both parties. But the frustration demonstrated by these circumstances raises at least the appearance that the subsequent actions taken against Mr. Reese—two violations of supervised release, a motion to re-sentence him—are not a product of the severity of his alleged criminal conduct, but stem from a desire to exact vengeance against him. Accordingly, a hearing should be held on whether the case should be dismissed as vindictive. At the very least, Mr. Wikstrom should be disqualified from handing the case.

A defendant is entitled to a disinterested prosecutor, *i.e.* one who does not have "an axe to grind against the defendant, as distinguished from the appropriate interest that members of society have in bringing a defendant to justice with respect to the crime with which he is charged." *Wright v. U.S.* 732 F.2d 1048, 1056 (1984). Actual vindictiveness in prosecution violates due process and the appearance of vindictiveness must also be

avoided. *See U.S. v. King*, 126 F.3d 394, 397 (2d Cir. 1997), *citing, inter alia, North Carolina v. Pearce*, 395 U.S. 711, 725 (1969). "[A]n indictment will be dismissed if there is a finding of 'actual' vindictiveness, or if there is a presumption of vindictiveness that has not been rebutted by objective evidence justifying the prosecutor's action. *U.S. v. Johnson*, 171 F.3d 139, 140-41 (2d Cir. 1999). However, "[a] finding of actual vindictiveness requires 'direct' evidence, such as evidence of a statement by the prosecutor, which is available 'only in a rare case.' … A presumption of vindictiveness arises when the circumstances of the case create a 'realistic likelihood' of prosecutorial vindictiveness."

### C.    Mr. Reese has demonstrated that AUSAs Pertz and Wikstrom have a personal interest in the outcome of this action, giving rise to a presumption of vindictiveness.

In this case, the circumstances set forth in the various docket entries—including AUSA Wikstrom's own statements and the timing of the various prosecutorial decisions—give rise at least to a presumption of vindictiveness that the government should be required to rebut. Mr. Reese engaged in his legal services business for decades, *see* Ind. ¶ 4 ("Reese has been performing unlicensed legal services for approximately 30 years."). The government has been aware of the business since at least 2009, when Mr. Reese was first placed on supervised release and notified Probation regarding his work. *See* ECF No. 9 at 2.[11] But the government took decisive action—violating Mr. Reese's supervised release,

---

[11] Years earlier, in a written decision in 2002, Judge Haight noted that Mr. Reese (then using the name Christopher Thomas) "has helped thousands of inmates in their legal work[,]" but that he "easily and convincingly lies when it suits his purposes[.]" *U.S. v. Camacho*, 188 F.Supp.2d 429, 450 (S.D.N.Y. 2002). It would be more than twenty years later, only when he ran afoul or AUSAs Pertz and Wikstrom, that Mr. Reese was first prosecuted in relation to such alleged conduct.

seeking re-sentencing, searching his home and his relative's home, and indicting him—
only after he began assisting people prosecuted by AUSAs Wikstrom and Pertz. We are
aware of no evidence that the investigation was opened as a result of a complaining
customer of Reese's or a judge. Rather, the triggering event setting off the explosion of
enforcement actions appears to have been that AUSA Wikstrom believed Reese called him
a liar in the *pro se* filing submitted on behalf of Wayne Hicks. That was shortly followed
by Reese's disruption of Jermaine Lightfoot's guilty plea and then torrent of enforcement
actions against Reese.

Under these circumstances, Mr. Reese has shown circumstances giving rise to a
presumption of vindictiveness that the government should be required to rebut or the
indictment should be dismissed. At the very least, Mr. Pertz and Wikstrom should be
disqualified from prosecuting the case based on their personal interest in the outcome and
their involvement in cases where they allege that Mr. Reese engaged in illegal conduct.

## IV. The fruits of the searches of Mr. Reese's home, internet accounts, and electronic devices should be suppressed because the warrants were not supported by probable cause and are overbroad.

The Email Warrants and the Apartment Warrants executed last April are sweeping
orders based on the faulty premise described above: that by preparing and submitting
materials to courts on behalf of others Mr. Reese was breaking the law. Absent this legal
premise, the warrant applications do not offer probable cause to believe that Mr. Reese
committed any crime, in the case of the Email Warrants, or committed crimes justifying
the broad seizures allowed in the Apartment Warrants. As such, all evidence seized

pursuant to the Email Warrants executed on Mr. Reese's accounts and the Apartment

Warrant executed at his home is subject to suppression under the Fourth Amendment.

> **A.    The warrant applications fail to allege probable cause to believe Mr. Reese was committing the crimes of unauthorized practice of law, scheme to defraud the United States, or wire fraud.**

In order for a search warrant to be valid, the warrant must establish probable cause

to believe "first, that a crime was committed, and second, that there is probable cause to

believe that evidence of such crime is located" at the place to be searched. *U.S. v. Travisano*,

724 F.2d 341, 343 (2d Cir. 1983). Both the applications for the Email Warrants and the

Apartment Warrants failed the first of these required showings, as they do not establish

probable cause to believe that Mr. Reese was committing the Subject Offenses,[12] *i.e.* Title

18, United States Code:

- "Sections 7 & 13(a) (unauthorized practice of law under the Assimilative Crimes Act and N.Y. Jud. L. §§ 478, 484, 485 & 485-a)"

- "371 (conspiracy to defraud the United States, regarding a scheme to defraud courts of the United States by making purported pro se filings in the names of defendants who did not author the papers)"

- "1343 & 1349 (wire fraud, and wire fraud conspiracy, regarding a scheme to defraud criminal defendants and their families of money for the provision of unauthorized legal services) and 2 (aiding and abetting same)

Ex. B: Email Warrants ¶ 4; Ex. C: Apartment Warrants ¶ 8. The applications recite

over more than twenty pages evidence that Mr. Reese—as he himself has told the Court—

was "providing such services as legal research and writing to both federal and state

---

[12] As discussed below, the application for the Apartment Warrants additionally alleges that Mr. Reese violated 18 U.S.C. "1001 (willfully false statements to the U.S. Probation Office)." Ex. C: Apartment Warrants ¶ 8.

criminal defendants and attorneys." Ex. B ¶ 19(b); Ex. C ¶ 18(b) (quoting a *pro se* Motion submitted by Mr. Reese to Judge Marrero). However, they fail to provide any evidence— let alone probable cause—of *illegal* acts.

As discussed in Section I(A) *supra*, N.Y. Jud. L. §§ 478, 484, 485 & 485-a do not criminalize the conduct alleged in the search warrant and in the indictment. The warrant applications state only that Mr. Reese: "has received thousands of dollars from federal criminal defendants and their family members, conducted legal research on their pending cases, then made purported *pro se* filings under the inmates' signatures in multiple federal district courts." Ex. B ¶ 13; Ex. C ¶ 10. Such conduct does not violate the narrow prescriptions of the cited law, N.Y. Jud. L. §§ 478, 484, 485 & 485-a. *See* § I.A, *supra.*

The warrant applications also make the novel claim that "by making purported *pro se* filings in the names of defendants who did not author the papers," Mr. Reese participated in a "conspiracy to defraud the United States." Ex. B: Email Warrants ¶ 4; Ex. C: Apartment Warrants ¶ 8. Conspiring to defraud the United States in violation of 18 U.S.C. § 371 requires a showing "(1) [that defendant] entered into an agreement (2) to obstruct a lawful function of the government (3) by deceitful or dishonest means and (4) at least one overt act in furtherance of the conspiracy." *U.S. v. Ballistrea*, 101 F.3d 827, 832 (2d Cir. 1996). The government here fails to provide any evidence that Mr. Reese agreed with anyone "to obstruct a lawful function of government" *or* that Mr. Reese used "deceitful or dishonest means to do so."

Submitting a filing to the *pro se* office does not require that a defendant assure the Court that any submitted filing was entirely, or even partially, researched and drafted by

the defendant himself. As Agent Smythe explains at length in both warrant applications, Mr. Reese did not attempt to hide his involvement with the filings from the Court: he submitted documents using his own email address, reesearch@gmail.com, which was a play on his own name. Ex. B ¶¶ 16, 18(a); Ex. C ¶¶ 15, 17(a). Mr. Reese did not scrub his filings of meta-data revealing he was the author. Ex. B ¶¶ 16-17; Ex. C ¶¶ 15-16. He has never hidden his business from the courts; as Agent Smythe noted in his applications, "REESE made a *pro se* filing requesting early termination of supervised release, admitting that his business was 'providing such services as legal research and writing to both federal and state criminal defendants and attorneys.'" Ex. B ¶ 19(b); Ex. C ¶ 18(b). There is no evidence he was ever filed a document through "deceitful or dishonest means" as required to prove a scheme to defraud the United States. *U.S. v. Ballistrea*, 101 F.3d at 832.

Furthermore, the affiant, Agent Smythe, provides no evidence in either warrant application that Mr. Reese entered an agreement which had the object of obstructing a lawful government function. Courts, as a matter of routine business, rule on criminal defendants' motions every day, many unlikely to succeed. Mr. Reese's customers' *pro se* filings, no matter how voluminous, or even frivolous, are part of this work and do not obstruct it, let alone give rise to a conspiracy whose *agreed upon object* is to obstruct a government function.

Finally, the warrant applications do not provide probable cause to believe that Mr. Reese defrauded his clients, *i.e.* that he intended to "obtain[] money or property by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1343. The Email Warrant application contains only two statements purportedly made by Mr. Reese to a

client, both of which were indirectly sent to the client. Specifically, in two emails sent by a family member to a client, the family member included a message the family member had purportedly received from Mr. Reese. These statements attributed to Reese merely explained the timeline for a filing and the cost, as well as Mr. Reese's indication that he did not believe a specific legal argument "will sway" the judge. Ex. B ¶ 28(a)(v)&(vii); Ex. C ¶ 27(a)(v)&(vii); *see generally* Ex. B; Ex. C.

The Email Warrant application contains no promises made by Mr. Reese. It does not even contain statements by clients indicating they are unhappy with the services Mr. Reese provided. The only hint of misrepresentations by Mr. Reese in the Email Warrant application is Agent Smythe's unsupported statement that, "Some of these defendants or their family members appear to have believed that REESE is actually an attorney, or entitled to provide services that only an attorney may lawfully provide." Ex. B ¶ 13, Ex. C ¶ 10. However, the application gives no information as to the factual basis for this conclusion by Agent Smythe, and makes no allegation that Mr. Reese ever claimed to be a lawyer or could provide services only an attorney could lawfully provide. In fact, the evidence in the application shows Mr. Reese was open with his clients and described himself as a paralegal, not a lawyer. Ex. B ¶ 19(c)(iii); Ex. C ¶18(c)(iii) (Mr. Reese's client told the court "that a man who considered himself a 'paralegal' had written and filed the motion on [his] behalf.") The lack of evidence of misrepresentations in the application for the Email Warrants is highlighted by the inclusion in the application for the Apartment Warrants of a section entitled "REESE's MISREPRESENTATIONS" which is notably absent from the Email Warrants Application. *Compare* Ex. B *and* Ex. C ¶ 37.

Thus, the Email Warrants application is not supported by probable cause to believe Mr. Reese was committing the Subject Offenses, and the evidence derived from it must be suppressed. *See e.g. U.S. v. Lahey*, 967 F.Supp.2d 698, 722 (S.D.N.Y. 2013) (suppressing evidence seized pursuant to a warrant where, after dismissing misleading statements of fact, all that remained was "very thin evidence connecting [defendant] (let alone his residence) to the drug deal in [co-defendant's] residence."). As discussed below, the marginal additional evidence provided in the Apartment Warrants is insufficient to save the Apartment Warrants from the same fate.

**B.    The additional allegations regarding wire fraud in the Apartment Warrants application are misleading; even taken at face value they cannot support probable cause to believe Mr. Reese committed wire fraud.**

In support of his application for the Apartment Warrants, Agent Smyth relied on largely the same evidence described in the Email Warrants application. *See generally* Ex. B; Ex. C. The Apartment Warrants application claimed that "[t]he scheme involves the unlicensed practice of law in a federal enclave, as well as misrepresentations to REESE's customers, made to convince them to pay REESE to draft and file legal papers which REESE is not legally permitted to file." Ex. C: Apartment Warrants ¶ 8. The application again contained pages of documentation showing Mr. Reese drafted legal filings for defendants, but no evidence showing Mr. Reese was scheming to defraud the United States or practicing law in violation of New York State law. *See generally id.* ¶ 9- 46 ("Probable Cause Regarding the Subject Offenses").

The Apartment Warrants application, unlike the Email Warrants application, contains a section entitled "REESE's MISREPRESENTATIONS"[13] which misleadingly quotes one line out of a series of emails purportedly between Mr. Reese and a client named Yong Wang, for whom Mr. Reese wrote a motion for compassionate release. Ex. C ¶ 37. Specifically, the Warrant Application noted that in an email to Mr. Wang, Mr. Reese wrote, "We can appeal, or initiate a new motion which will result in the vacatur of the conviction." *Id.* ¶ 37(a). Agent Smythe then explained that Mr. Reese, *filed an appeal*—not a new motion—and then stated, "the Second Circuit denied the appeal, proving false REESE's promise to vacate Wang's conviction." *Id.* ¶ 37(c). But Reese made no promise of success on the appeal, his promise, to the extent there was one, was specifically regarding the initiation of a new—undescribed—motion.

Furthermore, a review of the email exchange shows that Mr. Wang asked Mr. Reese what the worst-case scenario would be, and Mr. Reese responded, "You ask about the worst outcome? Well, the worst has already occurred. It's the sentence you are currently serving. Now, either you want to do something, or you want to do nothing." Ex. D.[14] The flat promise suggested by Agent Smythe in his application for the Apartment Warrants is taken out of context, ignoring the whole of the exchange between Mr. Reese and Mr. Wang, where the possibility of failure is made clear.

---

[13] Though the header is in the plural, there is only one misrepresentation alleged in the section. Ex. C. ¶ 37.

[14] A complete copy of this email exchange as received in discovery from the government is attached hereto as Exhibit D.

Furthermore, if this email exchange between Mr. Reese and Mr. Wang was acquired through the execution of the Email Warrants, it cannot be relied upon if the evidence collected pursuant to the Email Warrants is suppressed. *See e.g. Murray v. United States*. 487 U.S. 533 (1988). Where a warrant relies upon illegally seized evidence, admission of evidence seized pursuant to that warrant is only proper where two elements are satisfied: "(1) the warrant must be supported by probable cause derived from sources independent of the illegal entry; and (2) the decision to seek the warrant may not be prompted by information gleaned from the illegal conduct." *U.S. v. Johnson*, 994 F.2d 980, 986-7 (2d Cir. 1983). Thus, this "misrepresentation" to Mr. Wang must be stricken from the probable cause analysis if it was itself seized pursuant to the illegal Email Warrants.

### C.  The purported probable cause in the Apartment Warrants is insufficient to conclude Mr. Reese's business was "pervaded" by fraud justifying an all-records warrant.

Even if the Court finds that the single statement to Mr. Wang cited by the government in the application for the Apartment Warrant is sufficient to find probable cause to believe Mr. Reese committed wire fraud, the warrant as issued is overbroad. "The doctrine of overbreadth represents, in a sense, an intersection point for probable cause and particularity principles: it recognizes, in pertinent part, that a warrant's unparticularized description of the items subject to seizure may cause it to exceed the scope of otherwise duly established probable cause." *U.S. v. Wey*, 256 F.Supp.3d 355, 382 (S.D.N.Y. 2017) (Nathan, A.). "[A] warrant is overbroad if its 'description of the objects to be seized…is broader than can be justified by the probable cause upon which the warrant

is based.'" *U.S. v. Lustyik*, 57 F.Supp.3d 213, 228 (S.D.N.Y. 2014) (Briccetti, J.), *quoting*

*U.S. v. Galpin*, 720 F.3d 436, 446 (2d Cir. 2013).

"Under certain, limited circumstances, a warrant lacking in particularity can be saved by the so-called 'all records exception.' 'Under that exception, all records of a business may be seized if there is probable cause to believe that the entire operation is permeated with fraud.'" *U.S. v. Zemlyansky*, 945 F.Supp.2d 438, 460 (S.D.N.Y. 2013) (Oetken, J.), *quoting U.S. v. Hickey*, 16 F.Supp.2d 223, 240 (E.D.N.Y. 1998) (collecting cases) (Hurley, J.). "[T]he all records exception has been applied" when "the affidavit submitted in support of the warrant contained detailed information that would provide reason to believe that all or nearly all of the business under investigation was illegal." *Id.* at 461. This scenario is the opposite of the affidavit submitted here, where the government cited to only *one* supposed misrepresentation by Mr. Reese. Thus, by authorizing the seizure of all the records of Mr. Reese's business, the Apartment Warrant is invalid as its scope "exceed[ed] the probable cause upon which it is based." *Hickey*, 16 F.Supp.2d at 240.

> **D.     The probable cause that Mr. Reese made false statements to Probation could not support the sweeping warrant to search Mr. Reese's home and devices.**

Unlike the Email Warrants, the Apartment Warrants also defined the Subject Offenses to include a violation of 18 U.S.C. 1001, *i.e.* "willfully false statements to the U.S. Probation Office." These alleged false statements refer to the false statements cited by U.S. Probation in their violation report, the final version of which was dated August 31, 2022, specifically that Mr. Reese underreported his income and assets. Ex. A: Violation Report;

Ex. C ¶ 19. By the time the search warrant was issued, these specifications had been dismissed after Mr. Reese pled guilty to two other specifications and was sentenced to eight months in prison. Agent Smythe also stated, without providing further specificity that "[a]fter his release from Bureau of Prisons custody on or about April 18, 2023, REESE has twice informed Probation that he has no source of income, and depends on a particular female friend for financial assistance." *Id.* ¶ 19(b). However, Agent Smythe provides limited evidence to show that Mr. Reese received income *after* April 18, 2023, describing only two payments in 2023: a payment of $2,100 on September 19, 2023 and payments totaling $800 between May and July 2023. Ex. C•¶ 25, ¶ 30.[15] Accordingly, there is no basis to believe that Mr. Reese's post April 18, 2023 statements to Probation are false, particularly given the lack of time frame provided for when these statements were made.

Thus, the Apartment Warrant application sets out probable cause only for making false statements to Probation (or perhaps, as discussed *supra,* for defrauding Mr. Wang). Even if the Court is inclined to decide that the probable cause encompasses more recent false statements, or that Mr. Reese defrauded Mr. Wang, these findings alone are insufficient to save the warrant, as the warrant cannot be severed into its valid and invalid parts.

Where parts of the warrant are valid and distinguishable, severance may be inappropriate…where 'the warrant is generally invalid but as to some tangential item

---

[15] The affirmation also describes an email sent three days before Mr. Reese's release in which the writer claimed to have already given Reese "4 bands." Agent Smythe asserts this means $4,000, but, regardless, it predates Mr. Reese's release as shown by the fact that the government cites a payment made by the client for $2,000 on February 15, 2022. Ex. C: ¶ 36

meets the requirement of probable cause.'" *U.S. v. Galpin*, 720 F.3d 436, 449 (2d Cir. 2013) (*quoting U.S. v. Freeman*, 685 F.2d 942, 952 (5th Cir. 1982)). Here, the "valid" portions of the warrant are "tangential" to the whole. The scope outlined in the warrant makes clear that the object of the seizure was to investigate the whole of Mr. Reese's business, without providing an iota of probable cause to support such a far-ranging search and seizure.

Even if the Court determines the probable cause is not related to a "tangential item," the warrant still is not severable due to the breadth of the items to be seized. "When a warrant is severable, the portion of the warrant that is 'constitutionally infirm …—usually for lack of particularity or probable cause—is separated from the remainder and evidence seized pursuant to that portion is suppressed; evidence seized under the valid portion may be admitted.'" *Galpin*, 720 F.3d at 448. The Second Circuit has adopted a "step-by-step methodology for warrant redaction":

> First, the court must separate the warrant into its constituent clauses. Second, the court must examine each individual clause to determine whether it is sufficiently particularized and supported by probable cause. Third, the court must determine whether the valid parts are distinguishable from the nonvalid parts.…In sum, the court must be able to excise from the warrant those clauses that fail the particularity or probable cause requirements in a manner that leaves behind a coherent, constitutionally compliant redacted warrant.

*Id.* at 448-9 (citations and quotation marks omitted).

That is not possible here. The Apartment Warrant Order lists nine categories of items to be searched and seized and includes authorization for the seizure and search of "all electronic devices, including cellphones and computers" within Mr. Reese's apartment

38

and on his person. Ex. C, Attachments A-1 at 2; B-1. Of those nine categories, six of them used the phrase "Subject Offenses," indicating that the officers were allowed to seized evidence related to *any* of the listed Subject Offenses, not just misrepresentations to Probation or a limited wire fraud. *Id.* ¶¶ (c)-(h). For example, the warrant itself authorizes the seizure of communications between Mr. Reese and any of his "co-conspirators, victims, customers and other participants in the Subject Offenses"; as opposed to, for example, limiting the seizure to communications regarding payments, or his communications with Mr. Wang. Ex. C, Attachment B-1 § II(c).

The warrant order also authorized the seizure of: "[e]vidence concerning the drafting and filing of legal papers by CHRISTOPHER REESE and his agents and associates, and any money or other thing of value for that service, and concerning the marketing of legal services by REESE, including but not limited to communications between and among REESE and criminal defendants and their families and friends" *Id.* § II(a). This seizure is not connected specifically to the misrepresentation to probation—it concerns the physical drafting of legal papers, not the actual payments he received. The remaining two categories—"Evidence concerning the identity or location of the owner(s) or user(s) of the Subject Devices" and "Passwords or other information needed to access user's accounts"— are irrelevant without the other categories of evidence. Ex. C, Attachment B-1 §§ II (a) and (i). Thus, the Apartment Warrants order cannot be severed into valid and invalid portions, and all evidence seized pursuant to the Apartment Warrants must be suppressed.

\*\*\*

The warrants to search from top to bottom every paper in Mr. Reese's home and his hard drive, every communication on all his devices, and all data stored in his internet accounts are built on a house of cards. The foundation of this house of cards is the assertion Agent Smythe made to each magistrate that Mr. Reese was routinely breaking New York State and federal law simply by researching and drafting motions for federal defendants, and submitting them to the *pro se* office on their behalf. This assertion was false, and so the whole house of cards has fallen, and the evidence seized from Mr. Reese's home, his devices and his internet accounts must be suppressed.

## V.    Reese's statements on April 10, 2024 to law enforcement must be suppressed because he was represented by counsel with respect to the charges under investigation.

Under the Sixth Amendment, law enforcement may not interrogate or otherwise elicit statements from a defendant after formal charges have commenced, and counsel has been assigned. *McNeil v. William*, 501 U.S. 171 (1991); U*.S. v. Mills*, 412 F.3d 325 (2d Cir. 2005). The U.S. Attorneys offices in New York City usually scrupulously observe this limitation. However, we expect the government to argue that the right to be free from such deliberate elicitation of statements is "offense specific," meaning "when the Sixth Amendment right to counsel attaches, it does encompass offenses that, even if not formally charged, would be considered the same offense under the *Blockburger* test." *Texas v. Cobb*, 532 U.S. 162, 173 (2001).[16] The *Blockburger* test states: "[a] single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the

---

[16] There are circumstances where a valid waiver can occur, but where, as here, no *Miranda* warnings were given, there is no possibility of a valid waiver of Mr. Reese's Sixth Amendment right to counsel. *See e.g. Patterson v. Illinois*, 487 U.S. 285 (1988).

other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other." *Blockburger v. U.S.*, 284 U.S. 299, 304.

When Agent Smythe executed a search warrant on Mr. Reese's home and interrogated him, Mr. Reese had an appeal pending related to his violation of supervised release, for which he was represented by counsel, Lawrence Gerzog. Ex. E: Reese Affidavit ¶ 4. His 2022 violation of supervised release, as described by Agent Smythe in the search warrant, "included specifications alleging that REESE violated the terms of his supervised release by failing to make restitution payments in the amount of 15% of his monthly income; having contact with known felons; and *engaging in unauthorized practice of law, a crime under New York State law*." Ex. C: Apartment Warrant ¶ 18(c) (emphasis added).[17] While executing the warrant, Agent Smythe questioned Mr. Reese without giving warnings pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). Ex. E: Reese Affidavit ¶ 2. Mr. Reese was then charged in the pending indictment with the same alleged unauthorized practice of law, according to Agent Smythe, that was the subject of the violation of supervised release for which an appeal was still pending. Ind. ¶ 39. As such, Agent Smythe elicited the statements made by Mr. Reese in violation of the Sixth Amendment, and they must be suppressed.

---

[17] This latter assertion by Agent Smythe is incorrect: there is no such specification in any of the violation reports. However, the assertion in the warrant application demonstrates that Agent Smythe *believed* he was interrogating Mr. Reese for a crime that was already being prosecuted.

## **CONCLUSION**

For the reasons set forth above, the requested relief should be GRANTED in its

entirety.

Dated:         December 16, 2024
               New York, New York


Respectfully submitted,
ZMO Law PLLC

By: _____
     Zachary Margulis-Ohnuma
     353 Lexington Avenue, Suite 900
     New York, NY 10016
     (212) 685-0999