UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

- AGAINST -

CHRISTOPHER REESE,

DEFENDANT.

24 Cr. 402 (VEC)

**MEMORANDUM OF LAW IN OPPOSITION TO
GOVERNMENT'S MOTIONS *IN LIMINE***

ZMO Law PLLC
353 Lexington Avenue, Suit 900
New York, NY 10016
(212) 685-0999
zach@zmolaw.com

*ATTORNEYS FOR DEFENDANT CHRISTOPHER REESE*

## TABLE OF CONTENTS

BACKGROUND ........................................................................................................................... 1

ARGUMENT ................................................................................................................................ 1

    I.   DEFENSE EXPERT TYLER MAULSBY'S PROPOSED TESTIMONY IS COMPETENT, RELIABLE, AND WOULD BE HELPFUL TO THE JURY'S ANALYSIS OF COUNTS ONE THROUGH THREE OF THE INDICTMENT. ............... 1

        A.   Mr. Maulsby's Proposed Testimony ........................................................................ 2

        B.   Expert Maulsby's testimony will be helpful to the trier of fact because it will help jurors understand the complex range of activities that lawyers and unlicensed legal professionals engage in. ....................................................... 3

        C.   Expert Maulsby's testimony will be limited to factually relevant opinions and data without usurping the role of the Court. ................................................. 6

        D.   Mr. Maulsby reliably analyzed the conduct alleged in the Indictment. ........ 8

    II.   THE GOVERNMENT SHOULD BE REQUIRED TO IDENTIFY THE SPECIFIC EVIDENCE IT SEEKS TO INTRODUCE BEFORE THE COURT RULES ON ITS MOTIONS FOR INTRODUCTION OF EVIDENCE PURSUANT TO RULE 404(B) AND BUSINESS RECORDS CERTIFICATIONS. .................................................. 9

        A.   The government's request to admit evidence pursuant to Rule 404(b) should be denied. ...................................................................................................... 9

        B.   The government should be required to identify the records it seeks to introduce via business records certification before the Court rules on its admissibility ............................................................................................................. 11

    III.   THE DEFENSE CONCEDES THAT THE FEDERAL RULES OF EVIDENCE WOULD PERMIT THE GOVERNMENT TO CROSS EXAMINE MR. REESE REGARDING HIS 2013 CONVICTION ........................................................................................... 12

    IV.   THE GOVERNMENT HAS NOT SET FORTH ANY BASIS FOR THE COURT TO RESTRAIN THE DEFENSE FROM MAKING ARGUMENTS OR CROSS-EXAMINING WITNESSES. .......................................................................................... 12

        A.   If the Indictment is not dismissed and Mr. Pertz and Mr. Wikstrom stay on the case, Mr. Reese should be permitted to offer evidence and argument regarding their personal involvement in the underlying conduct ............... 14

        B.   The defense should be allowed to cross-examine Victim-1 and Victim-2 regarding racial bias. ............................................................................................... 15

CONCLUSION ......................................................................................................................... 17

**BACKGROUND**

In support of a five-count Indictment alleging fraud, money laundering, a false statement to the Department of Probation, and a violation of New York's criminal statutes governing the unlicensed practice of law, the government has submitted a series of motions seeking to admit business records and limit defense cross-examination and arguments, ECF No. 69: Gov't Mots. *In Limine* ("*In Limine* Mot."), including proposed defense expert testimony regarding the practice of law in New York State, ECF No. 70: Gov't Supp. Mot. *in Limine* to Preclude Proposed Def. Expert Testimony ("Expert Mot."). As explained below, the government's attack on the proposed defense expert testimony, is off-base and most of the government's other applications, are either premature or too vague to be ruled on at this juncture.[1]

**ARGUMENT**

**I. Defense expert Tyler Maulsby's proposed testimony is competent, reliable, and would be helpful to the jury's analysis of Counts One through Three of the Indictment.**

Under Rule 702 of the Federal Rules of Evidence, a qualified expert may testify if it is more likely than not that she possesses "specialized knowledge that will help the trier of fact understand the evidence or to determine a fact in issue[.]" Fed. R. Evid. 702(a). The testimony must also be "based on sufficient facts or data" and must be both based on and reflect the reliable application of reliable principles and methods to the facts of the case. Fed. R. Evid. 702(b)-(d). *See generally Joffe v. King & Spalding LLP,* No. 17 Civ. 3392 (VEC), 2019 WL

---

[1] The government has not yet provided Jencks Act or *Giglio* material and has alluded to—without revealing—witness testimony that it claims will support its case. We urge the Court to make no rulings at least until the defense has had a meaningful opportunity to review the specific proposed witness testimony. The government has agreed to disclose interview notes and reports of interviews on March 3, 2025, one week before trial.

1

4673554 at *2-4 (S.D.N.Y. Sept. 24, 2019). Under the Federal Rules, the admission of expert testimony is governed by a "liberal standard" and is presumed admissible, but the Court must nonetheless assume a gatekeeper role, ensuring the testimony is reliable and helpful to the jury. *Id*. Testimony that usurps the role of the Court or the jury is not helpful. *Id*. The party proffering expert testimony—in this case, Mr. Reese—"bears the burden of establishing admissibility under Rule 702 by showing that (1) the expert is qualified; (2) the proposed opinion is based on reliable data and methodology; and (3) the proposed testimony would be helpful to the trier of fact." *Id*. at 2, *citing Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005).

In this case, Mr. Maulsby's expert report meets all three criteria. *See* ECF No. 70-1: Tyler Maulsby Expert Report dated January 31, 2025 (hereinafter "Maulsby Report"). There is no dispute that Mr. Maulsby is qualified. *See* Expert Mot. at 14 ("Given his resume and lengthy work history in the field of professional responsibility, Maulsby is clearly an experienced and active advocate[.]"); Maulsby Report at 1-2 (summarizing qualifications) and Ex. A (Maulsby CV, list of publications, speaking engagements and prior expert engagements). We turn therefore to the government's contentions that the proposed testimony would not be helpful because, in their view, it offers legal conclusions and did not reliably analyze the facts.

A. **Mr. Maulsby's Proposed Testimony**

The government does not take issue with the adequacy of Mr. Maulsby's report which sets forth, *inter alia*, a complete statement of Mr. Maulsby's opinions and the bases for them

2

pursuant to Rule 16(b)(1)(C)(iii) of the Federal Rules of Criminal Procedure.[2] After reviewing Mr. Maulsby's qualifications and the circumstances of his retention under the Criminal Justice Act, the report provides a brief historical overview of the rules regulating the unauthorized practice of law ("UPL") and the role of inmates as jailhouse lawyers. *See* Maulsby Report at 3-6. It goes on to analyze the allegations in the Indictment and compare the conduct attributed to Mr. Reese to the work of licensed lawyers. *Id.* at 6-9. It notes that only certain activities (which are not specified in Jud. L. 485-a or individually evaluated in case law provided by the government) "constitute activities that are within the exclusive province of license[d] lawyers." *Id*. at 6. It notes that the Indictment does not allege that Mr. Reese engaged in such activities, which include providing individualized legal advice, holding one's self out as a lawyer, and appearing in court on behalf of a client. *Id*. at 7-9. Based on these observations and his experience in the field, Mr. Maulsby concludes to a reasonable degree of professional certainty that the "actions alleged in the indictment are not consistent with the types of activities that are exclusively performed by licensed attorneys." *Id*. at 9.

> **B. Expert Maulsby's testimony will be helpful to the trier of fact because it will help jurors understand the complex range of activities that lawyers and unlicensed legal professionals engage in.**

This testimony about the history of UPL, jailhouse lawyers, and what lawyers do and don't do in New York will be helpful to the jury, probative of Mr. Reese's innocence or guilt with respect to the first three counts, and is sufficiently reliable for the jury to hear. Any deficits in the reliability of Mr. Maulsby's opinion will be amply highlighted in the

---

[2] Mr. Reese was under no obligation to disclose an expert report since the government did not disclose a report and the report does not contain expert testimony about Mr. Reese's mental condition. *See* Fed. R. Crim. P. 16(b)(1)(C)(i). We did so in an abundance of caution and to avoid trial delays.

government's artful cross examination and, as the government proposes, possibly through an expert of its own.[3]

### 1. Maulsby's testimony about the functions of attorneys will help the jury determine whether Mr. Reese willfully made it a business to practice for another as an attorney in court and hold himself out as a person who could provide services only an attorney is authorized to provide.

Mr. Reese is accused in Counts 1 – 3 of the Indictment of criminally violating New York's statutes regulating legal practice and defrauding his customers by making false statements to them about legal matters. Based on the wording of the Indictment, we anticipate no dispute that the government is required in Count 3 to prove that Mr. Reese acted willfully. *See* Ind. ¶¶ 39. "Willfully" means "to act with knowledge that one's conduct is unlawful and with the intent to do something that the law forbids, that is to say with the bad purpose to disobey or disregard the law." Sand *et al.*, MODERN FEDERAL JURY INSTRUCTIONS-CRIMINAL, Instr. 3A-3; *see also, e.g. U.S. v. Henry*, 888 F.3d 589, 601 (2d Cir. 2018) ("in order to find that defendant acted willfully, the jury had to find both that defendant acted with knowledge that his conduct was unlawful and with the intent to do something that the law forbids"). In other words, the government must prove not only that Mr. Reese intentionally committed the alleged acts—offering and providing legal research and writing services to parties in criminal cases heard in federal court and drafting a legal brief and causing it to be submitted, *see* Ind. ¶ 39—but also that he did so *intending to violate New York's criminal unauthorized practice of law statutes* ("UPL"), Jud. L. §§ 484 and 485-a—*i.e.* the government

---

[3] The government asks for time to seek "its own rebuttal expert." Expert Mot. at 1, f.n. 2. We do not object to the government submitting (and, if necessary, litigating) an expert report prior to the March 10, 2025 trial date, but we would object to any adjournment of the trial as the government has had ample time to seek expert guidance in the three years it has been investigating and prosecuting Mr. Reese in connection with this alleged conduct.

must prove that unauthorized legal work was done "with the bad purpose to disobey or disregard the law." *Bryan v. U.S.*, 524 U.S. 184, 190 (1998).

The government will be required to present evidence that Mr. Reese knew his conduct was illegal.[4] But whether or not Mr. Reese knew his conduct was unlawful when he engaged in it will turn on how clear the UPL statutes were and what Mr. Reese knew about them. *See U.S. v. Kaplan*, 490 F.3d 110, 120 (2d Cir. 2007) (describing *U.S. v. Schultz*, 333 F.3d 3939 (2d Cir. 2003) "upholding the admission of other individuals' knowledge of a particular Egyptian law to prove the defendant's knowledge of the law, finding it was 'relevant both to explain the practice of the industry in which this prosecution arose and to establish'" what defendant would have known). To meet this evidence and argument, expert testimony about how law is practiced and regulated in New York is essential to Mr. Reese's defense. If two highly trained legal experts like Messrs. Maulsby and Pertz cannot agree on what constitutes the practice of law, how could a jury find that Mr. Reese—with only a GED and a ninth grade education, having spent much of his adult life in prison—would know that his specific conduct was illegal when he did not actually hold himself out as an attorney? By explaining the common practices in the legal industry and the storied history of jailhouse attorneys, Mr. Maulsby will educate the jury about the context of Mr. Reese's conduct which will assist them in determining whether the government has met its burden of showing a culpable state of mind.

---

[4] Notably, as has been referenced in prior briefing, the government has never directly presented evidence that Mr. Reese was told by his supervising probation officers or a court that his conduct was *illegal* under New York's UPL or any other statute. Rather, they have focused on the fact that—insofar as it entailed contact with felons—it was barred by the terms of his supervised release.

5

### 2. Expert Maulsby's testimony about the practice of law will help the jury understand whether Mr. Reese's alleged conduct was deceptive.

Counts 1 and 2 of the Indictment allege wire fraud conspiracy and wire fraud. Expert witness Tyler Maulsby's proposed testimony will help here too. The Indictment alleges that the fraud scheme consisted of "false and fraudulent representations to federal inmates, and their family members and friends, in order to obtain money from those individuals for unlicensed legal services." Ind. ¶¶ 37, 38. Again, the defense will turn on whether representations made to people were indeed false and whether the services Mr. Reese provided indeed required a license. Mr, Maulsby's testimony about the low success rate of the kinds of motions that Mr. Reese filed, Maulsby Report at 8, will assist the jury in analyzing whether the alleged statements were in fact intentionally false and fraudulent, or just mistaken. Mr. Maulsby's testimony that similar services fall short of UPL and do not require a law license will also assist the jury in understanding whether Mr. Reese's claims to his customers were in fact false and fraudulent.

### C. Expert Maulsby's testimony will be limited to factually relevant opinions and data without usurping the role of the Court.

The government argues that Mr. Maulsby's testimony would not be helpful because it offers legal conclusions and could be seen as "compet[ing] with the judge in the function of instructing the jury." Expert Mot. at 8, *quoting Hygh* v. *Jacobs*, 961 F.2d 359, 363-364 (2d Cir. 1992). The government does not (and should not) propose a lengthy jury instruction setting forth every act that may or may not constitute the practice of law in New York State. Rather, the ultimate question—whether Mr. Reese willfully violated New York Judiciary Law §§ 484 and 485-a—is a mixed question of fact and law for the jury. *See U.S. v. Gaudin*, 515 U.S. 506, 512-515 (1995) (recognizing the "constitutionally guaranteed right of criminal defendants

to demand that the jury decide guilt or innocence on every issue, which includes application of the law to the facts"). "The jury's constitutional responsibility is not merely to determine the facts, but to apply the law to those facts and draw the ultimate conclusion of guilt or innocence." *Id*. at 514. Applied here, it is not enough for the jury to find that Mr. Reese filed a particular brief or gave some particular legal advice; rather, they must find based on all the evidence beyond a reasonable doubt that Mr. Reese willfully engaged in the unauthorized practice of law, *i.e.*, made it a business to practice for another as an attorney and falsely held himself out as a person who could provide services only attorneys are authorized to provide within the federal enclave. As the government acknowledges, Mr. Maulsby's testimony will not include an opinion as to whether Mr. Reese engaged in UPL. Expert Mot. at 8; Maulsby Report at 3. Rather, it will describe the activities that lawyers and non-lawyers typically do in New York, so that the jury can determine the mixed legal/factual question of whether what Mr. Reese did, as a whole, constituted the practice of law.

The cases cited by the government are not contrary to this approach. In *Hygh* v. *Jacobs*, 961 F.2d 359, the expert testified "extensively" about an officer's use of force and was permitted to provide a definition for the legal term "deadly physical force" even where there was a statutory definition. But the expert went too far by opining that the particular force used "was not 'justified under the circumstances,' not 'warranted under the circumstances,' and 'totally improper.'" *Id*. at 364. In *Hygh*, the expert "crossed the line" by *answering* the mixed question of fact and law that should have been left to the jury. *Id*. Mr. Maulsby will not do that here.[5]

---

[5] *See also* Expert Mot. at 6. The other relevant case cited by the government also can be distinguished. In *U.S. v. Grote*, 961 F.3d 105, 121 (2d Cir. 2010), the Second Circuit found no

7

**D.     Mr. Maulsby reliably analyzed the conduct alleged in the Indictment.**

Next the government takes issue with the content Mr. Maulsby's conclusions, arguing that his analysis "badly misapplied the law to his self-curated universe." Expert Mot. at 9-14.

But Mr. Maulsby was not "applying the law" at all—that's the jury's job. He was stating, based on his training and experience and using a single famous New York Court of Appeals case as a reference, his professional opinion as an expert on legal practice that the activities alleged in the Indictment "are not within the exclusive province of licensed lawyers." Maulsby Report at 3. This is a perfectly reliable analysis: it compares what only lawyers can do with what Mr. Reese is alleged to have done and concludes that, so long as Mr. Reese did not hold himself out as a lawyer, his conduct was not reserved *exclusively* to attorneys. Mr. Reese did not appear in court, sign briefs, pretend he was an attorney, or claim to have been licensed in any jurisdiction. The extent to which the information he provided to his customers was tailored to their situation is, apparently, likely to be a matter of factual dispute. *Compare* Maulsby Report at 7-8 (referencing the use of legal templates), *with* Expert Mot. at 11 (Maulsby does not identify the templates), *with* ECF No. 60-1: Agent Aff. in Support of Search Warrant for Stored Electronic Communications at 24, ¶ 16 ("Although there is variation in his work, REESE often uses particular, distinctive formatting, style and tone, making his submissions recognizable."). If the government feels that Mr. Maulsby's analysis is based on a mistaken interpretation of the facts the government has provided, it is free to

---

abuse of discretion in defendants' appeal based on the trial court's exclusion of testimony "on the topic of tribal sovereign immunity" and noted that expert testimony must not usurp the role of the trial judge in instructing the jury. *See* Expert Mot. at 6. But, for the reasons set forth above, Mr. Maulsby's testimony about the practice of law in New York will not usurp the Court's role but rather will assist the jury in determining the ultimate facts.

explore that on cross examination. For purposes of admissibility, Mr. Maulsby's method is reliable and helpful to the jury.

II. **The government should be required to identify the specific evidence it seeks to introduce before the Court rules on its motions for introduction of evidence pursuant to Rule 404(b) and business records certifications.**

    A. **The government's request to admit evidence pursuant to Rule 404(b) should be denied.**

        1. **The government should be required to identify the specific evidence it seeks to introduce outside the time frame described in the indictment.**

The government requests pretrial admission of evidence of Mr. Reese's conduct that occurred "approximately three-and-a half months beyond" the charged conspiracy, as well evidence related to conduct prior to the charged conspiracy in order to show that his "unauthorized legal practice was longstanding." Mot. at 6, 7. This application is not ripe as the government has not identified the specific evidence it seeks to admit, other than one email to an alleged victim's lawyer. *Id.* at 7. The defense does not object to admission of this particular email on Rule 404(b) grounds (though we reserve the right to object on other grounds). As to the other evidence alluded to by the government in its motions *in limine*, the notice provided is insufficient under Rule 404(b)(3) as it describes broad categories of evidence and is not specific enough to allow the defense to mount defenses in anticipation of the introduction of such evidence or arguments for its exclusion.

        2. **The government should be precluded from offering evidence that Mr. Reese did not file tax returns.**

The government seeks to introduce evidence that Mr. Reese (and his alleged co-conspirator "CC-1") failed to file tax returns or pay taxes; however, this evidence should be precluded under Rules 404(b) and 403 of the Federal Rules of Evidence as it consists of

improper propensity evidence, and its prejudicial effect substantially outweighs its limited probative value. The government argues Mr. Reese and CC-1's failure to file tax returns is admissible because from this evidence "a reasonable juror could infer that the defendant and his coconspirator knew the proceeds at issue derived from illegal activity." Mot. at 9. But that inference strains credulity—there are many, many reasons people fail to pay tax returns and the absence of returns in the relevant years here sheds no light on any factual issue to be tried.

As to the government's argument that Mr. Reese's failure to file a tax return "supports the willfulness of, and lack of mistake in, Reese's false representations to Probation," Mot. at 9, the risk of prejudice from this evidence substantially outweighs its probative value. Mr. Reese did not take any affirmative action when he failed to file tax returns—he did not lie on his returns, as the government argues he did to probation. A tax return that understated his income would be more probative as to whether Mr. Reese's statements to probation were purposeful than a failure to file at all. The inference the jury will be left to draw if this evidence is introduced is that Mr. Reese is a person who does not pay what the government is owed—he did not pay restitution to the government, and he did not pay taxes to the government. The prejudicial impact of this type of propensity evidence outweighs its minimal probative value.

Furthermore, that CC-1 failed to pay taxes is irrelevant to Mr. Reese. He had no control over her taxes, and no duties as regards to them, and thus CC-1's tax information should not be admitted at trial.

**B.   The government should be required to identify the specific records it seeks to introduce via business records certification before the Court rules on its admissibility.**

The government has not identified the specific records it will seek to introduce via business records certification. Therefore, we are unable at this time to determine whether the defense will object to admission of the evidence pursuant to business records certifications. However, based on the government's representations regarding the evidence, the defense does not anticipate objecting to the following records based on authenticity—though we may still object on hearsay, relevance, prejudice or other grounds:

- Telephone Records
- Records from federal Electronic Case Filing ("ECF") systems[6]
- Records from Microsoft, Google, Yahoo and Apple[7]
- Financial records
- Educational records
- Tax Records
- Transaction Records from the U.S. Attorney's Office Financial Litigation Unit
- Wire Records from the Federal Reserve Bank

---

[6] The government has agreed that if the defense does not object to the introduction of ECF records on authenticity grounds, the government would not object on authenticity grounds should the defense seek to introduce additional ECF records.

[7] The government described the types of records it seeks to introduce from these companies as "accountholder's subscriber information, emails, chat messages, and documents in cloud storage." Mot. at 12. If the government seeks to introduce more complex data, which an average juror is not able to understand and interpret, the defense intends to argue a records custodian is required to explain how the data is collected and what it means. The government may not simply "argue" what the meaning of a list of numbers is without presenting a witness who can explain what it means as a foundation for the relevance of the data.

11

- Attorney Registration Records from the New York State Office of Court Administration.

The government asserts in a footnote that it also seeks to introduce "email records from public entities (including the Clerk of the United States District Court for the Southern District of New York and the Bureau of Prisons)" and states the defense indicated it will stipulate to the authenticity of those records. Mot. at 10, f.n. 5. This assertion apparently reflects a misunderstanding between the defense and the government, as the defense did not understand that these emails were in the category of documents the government referred to as "public entity records." To date, the government has not provided sufficient information to show these emails are "business records" within the meaning of Rules 803(6) and 902(11) of the Federal Rules of Evidence. *See e.g. Morisseau v. DLA Piper*, 532 F.Supp.2d 595, 621, f.n. 163 (S.D.N.Y. 2008) ("An email created within a business entity does not, for that reason alone, satisfy the business records exception of the hearsay rule.").[8]

### III. The defense concedes that the Federal Rules of Evidence would permit the government to cross examine Mr. Reese regarding his 2013 conviction.

The defense concedes that pursuant to Rule 609(a)(2) of the Federal Rules of Evidence, the fact of Mr. Reese's conviction on or about March 29, 2013 is admissible if Mr. Reese testifies on his own behalf.

### IV. The government has not set forth any basis for the Court to restrain the defense from making arguments or cross-examining witnesses.

The government asks the Court to preclude the defense from (A) arguing it was lawful to "provide paid, unsupervised legal services without a license to practice law," *In Limine*

---

[8] The defense may agree to a stipulation as to the authenticity of these emails once they are identified by the government; however, as the specific emails at issue have not been identified the defense cannot at this time determine whether a stipulation would be appropriate or whether a business records certification is sufficient.

Mot. at 17-18; (B) cross-examining an alleged victim about their recorded anti-Black statements, *id*. at 18-21; (C) offering "evidence and argument that Reese's victims were negligent or failed to conduct adequate due diligence," *id*. at 21-22; (D) arguing that Mr. Reese's speech was protected by the First Amendment, *id.* at 22-23; (E) presenting evidence and argument about the "vindictive nature of, or improper motivation for, the government's case," *id*. at 23-24; and (F) offering evidence and argument relating to punishment. *See In Limine* Mot. at 16-25.

We respectfully submit that, of these applications, only Points B and E require the Court's consideration at this time. At least until the government rests, the defense plans to present an opening statement and cross examination demonstrating that the government cannot prove its case beyond a reasonable doubt on any of the counts in the Indictment.

As to Points A and D, we cannot see how Mr. Reese would be making affirmative arguments trying to show something was legal or protected by the First Amendment—he has no obligation to do so as he enjoys a Constitutional due process presumption of innocence and a right to remain silent. U.S. Const. Amend. V. We will, of course, meet the government's claims that any particular conduct is illegal, including with the expert testimony described above. *See* Argument § I.

As to Point C, Mr. Reese agrees with the government that evidence of alleged victims' negligence or failure to conduct due diligence does not, in itself, provide a defense. However, we anticipate vigorous cross-examination relating to the alleged victims' interactions with Mr. Reese, his statements to them and, if the government opens the door, their expectations and interpretations of his alleged statements. The Court should not impose limits at this time on good-faith cross examination.

As to Point F, we do not intend to offer evidence or argument relating to punishment.

Accordingly, there is no reason to rule on Points A, C, D, or F now. We turn to the government's applications relating to the vindictive nature of the prosecution against Mr. Reese and the limits of our cross-examination of the government's overtly racist witness.

**A. If the Indictment is not dismissed and Mr. Pertz and Mr. Wikstrom stay on the case, Mr. Reese should be permitted to offer evidence and argument regarding their personal involvement in the underlying conduct.**

The government moves to "preclude…argument that the prosecution was vindictive[,]" motivated by a desire to "exact vengeance" against Mr. Reese, or "unreasonably delayed[.]" *In Limine* Mot. at 2. The government does not ask for limitations on what evidence can be presented in connection with these arguments and the defense does not intend to make these precise arguments in front of the jury, since they must be resolved by the Court before trial. *See* ECF Nos. 60 & 61: Pretrial Motions.

However, the defense *does* intend to present substantial evidence concerning the prosecutors, AUSAs T. Josiah Pertz and Derek Wikstrom, from which the jury could conclude that the government is pressing this unusual case for reasons personal to Messrs. Pertz and Wikstrom. This evidence will consist of, *inter alia*, public filings submitted by Mr. Reese on behalf of other people shortly before the government began investigating him in connection with the allegations in the Indictment. As discussed in our pretrial motions, public filings from Mr. Reese's email address specifically criticized both Mr. Pertz and Mr. Wikstrom and included a successful motion to vacate a guilty plea they had negotiated. *See* ECF No. 61: Memorandum of Law in Support of Pretrial Motions at 22-26.

We respectfully submit that the jury should consider this evidence in considering what weight to give to the evidence and arguments presented by Mr. Pertz and Mr. Wikstrom.

14

The defense would argue that these prosecutors' presentations of the evidence and arguments should be scrutinized very carefully and, to the extent they were involved in preparing witnesses, those witnesses' testimony should also be subjected to extraordinary scrutiny. The defense will engage with the government's evidence and explain to the jury that it does not support Mr. Pertz's and Mr. Wikstrom's case against Mr. Reese, which appears to have been brought for reasons that are personal to Mr. Pertz and Mr. Wikstrom. We will not ask for jury nullification, but rather for a searching examination of the evidence in light of the prosecutors' demonstrable personal animus against Mr. Reese.

Tellingly, nothing in the cases cited by the government supports their contention that such evidence would be improper. Relevant case law is sparse on this subject because prosecutors have traditionally been reluctant to put themselves in the position that Messrs. Wikstrom and Pertz have. As a result, our research revealed no cases testing situations where, as here, the defense offers at trial concrete documentary evidence that an individual prosecutor was personally targeted by a defendant he or she went on to prosecute—much less went on to prosecute under a novel application of state law in federal court.

### B. The defense should be allowed to cross-examine Victim-1 and Victim-2 regarding racial bias.

Finally, the government has moved to preclude the defense from cross examining alleged victim-witnesses about their racial biases, despite an undisputed good-basis to do so. *In Limine* Mot. at 18-21. The motion should be denied.

We respectfully submit that the Court should permit fulsome cross examination of "Victim-1" and "Victim-2," including about racial bias and a particular phone call identified by the government. *See* Mot. at 18-21. As the government concedes, "[t]he Confrontation Clause of the Sixth Amendment protects the defendant's right to cross examine a

Government witness in order to 'show a prototypical form of bias on the part of the witness,' and '[i]t is hard to conceive of a more 'prototypical form of bias' than racial bias.'" Mot. at 19, *quoting U.S. v. Figueroa*, 548 F.3d 222, 228 (2d Cir. 2008). The government argues the racism on display in the call is irrelevant because at the time of the crime the victims allegedly had not personally seen Mr. Reese. Mot. at 20-21. This is irrelevant. Victim-1 and Victim-2 will see Mr. Reese when they testify at trial, and their bias could color their testimony in that moment. The government does not claim the witnesses were in fact unaware of Mr. Reese's race and could have learned it in myriad other ways, including by speaking to him or discussing him with others. Even if the witnesses did not know Mr. Reeses's race, their casual ignorant racist comments undermine their credibility as a general matter.

Even though Victim-1's racist statements were the more disturbing comments during the recorded conversation, the defense should still be allowed to cross examine Victim-2 regarding the conversation. That Victim-2 is (or was) romantically involved with someone who stated, "Nasty mother*****r. Black Africa mother*****rs working there, right?" and that Victim-2, upon hearing that statement from his romantic partner, replied only, "Yeah, Well, they're all Black and the cheap hotels, it's all Black" is relevant to show he is racially biased. The Confrontation Clause mandates that the defense be allowed to cross examine both Victim-1 and Victim-2 about this phone call and any racial bias they may have towards Mr. Reese or generally. *See e.g. Brinson v. Walker*, 547 F.3d 387 (2d Cir. 2008) (reversing state court conviction because defense was precluded from cross-examining the victim about his termination from a job because he refused to serve black patrons).

**CONCLUSION**

For the reasons set forth above, the testimony of defense expert Tyler Maulsby is reliable and will be helpful to the jury, the Court should not agree to admit evidence the government has not yet identified, and the defense should not be constrained from cross examining or making arguments based on the evidence, including evidence that the prosecution was only brought after Mr. Reese personally attacked the individual prosecutors presenting the case to the jury.

Dated: February 17, 2025
New York, New York


Respectfully submitted,
ZMO Law PLLC

By: __s/_____
    Zachary Margulis-Ohnuma
    353 Lexington Avenue, Suite 900
    New York, NY 10016
    (212) 685-0999