UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
UNITED STATES OF AMERICA,                                         :
                                                                  :
               -against-                                   :   24-CR-402 (VEC)
                                                                  :
CHRISTOPHER REESE,                                                :   ORDER
                                  Defendant.    :
                                                                  :
------------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

      Defendant Christopher Reese was convicted after trial of wire fraud, the unauthorized practice of law, making a false statement to a United States Probation Officer, and conspiracy to commit money laundering. Mr. Reese moves to set aside his convictions pursuant to Federal Rules of Criminal Procedure 29 and 33, arguing that (1) venue was improper as to the false statement charge, (2) he did not engage in the unauthorized practice of law within or upon a federal enclave, as required by the Assimilative Crimes Act, and (3) the wire fraud and conspiracy to commit money laundering convictions are unsupportable in light of recent Supreme Court precedent. Mr. Reese's motion is DENIED.

## BACKGROUND

      The Court assumes the parties' familiarity with the facts of the case. The Court will review key details to the extent they are relevant to the issues raised in the defense's motion.

      On June 24, 2024, a grand jury returned an Indictment, Dkt. 1, alleging that Defendant Christopher Reese engaged in the unauthorized practice of law. He was charged with conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349, wire fraud in violation of 18 U.S.C. § 1343, unauthorized practice of law in a federal enclave in violation of N.Y. Jud. L. §§ 484 and 485-a (punishable under the Assimilative Crimes Act, 18 U.S.C. § 13), making a false statement

to a United States Probation Officer in violation of 18 U.S.C. § 1001, and conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h).

At trial, the Government introduced evidence that Mr. Reese, a nonlawyer, operated an unlicensed legal services business through which he gave legal advice and drafted and filed legal documents on behalf of inmates. Victim testimony showed a consistent pattern. First, Mr. Reese promised the inmates and their friends and family members that he could draft and file motions that would result in extraordinary relief. *See, e.g.*, GX 430 (Reese telling an inmate, "I have no reservations that the twenty year term on Count Two will be modified and/or vacated . . . ."); GX 9 at 1 (Reese telling an inmate, "Upon further review of your case, we've determined that we can guarantee your release . . . ."); GX 603-T at 2 (Reese telling an inmate's spouse, "Basically, we've already determined that we can get him out. I just need to give you the particulars."); GX 3011 at USAO_00051274 (Reese telling an inmate, "We can appeal, or initiate a new motion which will result in the vacatur of the conviction."). Relying on Reese's representations about the likelihood of success (and unaware that his motions were usually not successful), the inmates and their friends or family paid Mr. Reese to draft and file legal documents on their behalf. *See, e.g.*, Trial Transcript ("Tr.") at 136:25–137:24, 345:23–346:12, 423:12–424:2 (inmates' family members testifying that they would not have paid Reese if he had not promised success). Mr. Reese then filed the motions, which were often denied and described as meritless. *See, e.g.*, GX 1162 at 3 (E.D.N.Y. judge describing motion as "moot" and "meritless"); GX 1238 at 15:10–11 (S.D.N.Y. judge describing motion as "frivolous"); GX 1001-64 at 1 (S.D.N.Y. judge describing motion as "baseless"). Mr. Reese admitted on cross-examination that the U.S. Court of Appeals for the Second Circuit was among the courts in which he filed documents. Tr. at 1067:6–18; *see*

*also* GX 5002 (email from Reese's business email account to the Second Circuit's *pro se* inbox to file a brief); GX 1119 (copy of the brief as filed with the Second Circuit).

The Government also introduced evidence that Mr. Reese had been convicted in a separate criminal trial in the Southern District of New York in 2014. Pursuant to the judgment entered by the Hon. Victor Marrero in that case, Mr. Reese owes more than $60,000 in restitution. *See* GX 522. The terms of his supervised release require him to make good faith efforts to pay restitution, as well as to avoid contact with convicted felons. While on supervised release for that conviction, Mr. Reese has lived in the Eastern District of New York and has been supervised by probation officers in that District. Tr. at 478:17–479:7, 489:23–24, 606:1–18. Throughout his supervision, Mr. Reese submitted financial disclosure forms to his probation officer indicating that he had no income and no assets. *See* GX 202, 209, 211, 212, Tr. at 608:5–8. In reality, he was making significant sums of money from his unlicensed law practice. *See, e.g.*, GX 146 at USAO_00069212–24 (payment data indicating that Mr. Reese received many payments for "legal fees" during the term of his supervised release); Tr. at 1067:11–1068:3 (Reese testifying that he accepted money for legal filings throughout the relevant time period). Mr. Reese collaborated with a woman he identified as his niece, Assata Rhodes, to conceal his earnings from his probation officers, enlisting her to receive and hold certain payments generated by his legal services business. *See* GX 8; GX 146.

When the probation officer in the Eastern District of New York became aware that Mr. Reese had made false statements about his finances, he prepared a report alleging that Mr. Reese had violated the terms of supervised release. Tr. at 630:24–6. The officer transmitted that report to his supervisors in both the Eastern and Southern Districts of New York, who then sent it to Judge Marrero in the Southern District. *Id.* at 630:12–21.

In light of this and other evidence presented during the four-day trial, the jury returned a verdict finding Mr. Reese guilty of wire fraud, the unauthorized practice of law, conspiracy to commit money laundering, and making a false statement to a United States Probation Officer. The jury acquitted Mr. Reese of conspiracy to commit wire fraud. He now moves to vacate his convictions pursuant to Federal Rules of Criminal Procedure 29 and 33.

## DISCUSSION

### I.    Legal Standard

Federal Rule of Criminal Procedure Rule 29(c) allows a trial court to set aside a jury's guilty verdict and enter a judgment of acquittal. Defendants seeking relief under Rule 29 bear a "heavy burden." *United States v. Caracappa*, 614 F.3d 30, 43 (2d Cir. 2010). The movant must show such grave problems with the prosecution's case that "no rational trier of fact could have found all of the elements of the crime beyond a reasonable doubt." *Id*. "[C]ourts must be careful to avoid usurping the role of the jury when confronted with a motion for acquittal." *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003). Rule 29 "does not provide the trial court with an opportunity to substitute its own determination of . . . the weight of the evidence and the reasonable inferences to be drawn for that of the jury." *United States v. Guadagna*, 183 F.3d 122, 129 (2d Cir. 1999). The Court must "review all of the evidence presented at trial in the light most favorable to the government, crediting every inference that the jury might have drawn in favor of the government." *United States v. Walker*, 191 F.3d 326, 333 (2d Cir. 1999).

Similarly, Federal Rule of Criminal Procedure Rule 33(a) allows trial courts, upon a defendant's motion, to "vacate any judgment and grant a new trial if the interest of justice so requires." This is an "extraordinary" remedy that courts must use "sparingly." *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001). As in the Rule 29 context, "[i]t is the defendant

who bears the burden" on a Rule 33 motion. *United States v. Sasso*, 59 F.3d 341, 350 (2d Cir. 1995). "The test [for Rule 33 relief] is whether it would be a manifest injustice to let the guilty verdict stand." *United States v. Guang*, 511 F.3d 110, 119 (2d Cir. 2007). Put otherwise, "before ordering a new trial pursuant to Rule 33, a district court must find that there is a real concern that an innocent person may have been convicted." *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009).

## II. The Jury's Conclusion that Venue Was Proper in This District with Respect to the § 1001 Charge Is Supported by the Record

The defense first argues that Mr. Reese's conviction for making false statements to Probation in violation of 18 U.S.C. § 1001 must be set aside due to improper venue. Although the defense styles its venue argument as a challenge to the sufficiency of the evidence, the parties do not dispute the basic facts: Mr. Reese made false statements in the Eastern District of New York and sent them to Eastern District probation officers, who later transmitted those false statements to Southern District of New York probation officers for the purpose of preparing a violation report for Judge Marrero in the Southern District of New York. Motion to Set Aside Verdict ("Mot."), Dkt. 110, at 2; Opposition to Defendant's Post-Trial Motions, Dkt. 113, at 2. The question is not whether there is sufficient evidence to support the Government's version of the facts, but rather whether the agreed-upon facts provide a sufficient legal basis for venue to be proper in this District.

The Government bears the burden of proving, by a preponderance of the evidence, that venue is proper in the district in which the prosecution is brought. *United States v. Ramirez*, 420 F.3d 134, 139 (2d Cir. 2005). When a crime takes place across multiple locations, "venue is properly laid in any of the districts where the essential conduct element of the crime took place."

*Id.* "[T]he essential conduct prohibited by § 1001(a)(2) is the making of a materially false, fictitious, or fraudulent statement." *United States v. Coplan*, 703 F.3d 46, 79 (2d Cir. 2012).

The parties agree that Mr. Reese made the false statements outside of this District. That does not, however, end the Court's inquiry, because materiality is also an essential element of § 1001. *See id.* (where a false statement is made in one District but transmitted to another in a § 1001 case, "the materiality requirement proves dispositive with respect to venue"). A statement is material within the meaning of § 1001 if it has "a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it was addressed, or if it is capable of distracting government investigators' attention away from a critical matter." *United States v. Adebanwi*, 675 F.3d 178, 182 (2d Cir. 2012) (citations and internal quotation marks omitted). If "[p]roving the materiality" of a defendant's false statements "requires evidence that those statements were conveyed to or had an effect on [government] investigators working in the Southern District of New York," venue is proper in this District. *Coplan*, 703 F.3d at 79; *see also United States v. Salinas*, 373 F.3d 161, 167 (1st Cir. 2004) ("When materiality is a critical component of the statutory definition, it makes perfect sense to consider the crime as continuing into the district in which the effects of the false statement are felt.").

In this case, the Government's theory of venue on the § 1001 charge is that "the entire purpose and effect" of Mr. Reese's false statements was to ensure that "he would not have to pay money" on restitution ordered by Judge Marrero in this District. Tr. at 1435:1–5; *see also id.* at 631:2–16 (E.D.N.Y. Probation Officer testifying that he understood that his violation report regarding Mr. Reese would be read by supervisors in both E.D.N.Y. and S.D.N.Y. and then "forwarded to the Court"). Mr. Reese's underreporting of his income, therefore, was capable of influencing the decision of probation officers in the Southern District of New York whether to

file a violation report. *See id*. at 638:16–20 (E.D.N.Y. Probation Officer testifying that he transmitted Mr. Reese's statements "to an officer in the Southern District of New York with the purpose that they be transmitted to the judge for use in a proceeding in the Southern District of New York"). That is sufficient for venue purposes; a slew of § 1001 cases in this Circuit have found venue to be proper not only in the district where the false statements were made, but also in the district to which they were transmitted. *See Coplan*, 703 F.3d at 78–80 (venue proper in S.D.N.Y. when false statements were made during a deposition in Tennessee and transmitted for review and analysis by IRS officials in Manhattan in connection with an ongoing audit); *Ramirez*, 420 F.3d at 142–43 (venue proper in S.D.N.Y. when false statements were filed with the New Jersey Department of Labor, which forwarded them to the U.S. Department of Labor in Manhattan for processing); *United States v. Candella*, 487 F.2d 1223, 1227–28 (2d Cir. 1973) (venue proper in S.D.N.Y. when defendants made false statements to a New York City agency based in Brooklyn, which forwarded them to the U.S. Department of Housing and Urban Development in Manhattan).

The defense argues that the Government's theory would push the Second Circuit's § 1001 venue jurisprudence beyond its rational limits "to include cases where the materiality of the false statement only lingers at the time of transmission as part of the government's efforts to *punish* the defendant for the false statement." Mot. at 3–4. The Second Circuit considered and rejected a similar argument in *United States v. Ramirez*, 420 F.3d 134 (2d Cir. 2005). There, the defendant was charged pursuant to § 1001 with making false statements on several forms filed with the New Jersey Department of Labor; the forms were forwarded to the U.S. Department of Labor in Manhattan. *Id.* at 142. The defendant argued that venue did not lie in this District because "the N.J. DOL was not a mere conduit of the documents, but rather had the duty to

review and process them and the power to reject or deny them." *Id*. (internal quotation marks omitted). The court disagreed, explaining,

> Whether or not the New Jersey agency reviewed the applications, . . . the fact is that it forwarded them to the U.S. DOL in the Southern District of New York. . . . [V]enue was properly laid in the Southern District of New York because [the defendant's] statements continued to be false and continued to be within the jurisdiction of the United States when they finally reached Manhattan.

*Id.* at 142–43. The same is true here: although Mr. Reese made false statements to his Eastern District probation officers and those officers had discretion whether to transmit the statements to their Southern District counterparts, the fact remains that the false statements *were* transmitted to this District, and once transmitted, they were capable of influencing the Southern District probation officers' decision to issue a violation report.

More generally, the defense argues that permitting Mr. Reese to be prosecuted in this District "would subvert the purpose of the Constitutional venue rule, permitting venue to exist not simply in 'the whole area through which force propelled by an offender operates' but also through the whole area through which the force of the *prosecution* for the false statement operates." Mot. at 5 (quoting *United States v. Johnson*, 323 U.S. 273, 275 (1944)). Courts in this Circuit, however, have concluded that the Government satisfies the venue requirement when it shows that a defendant's false statement could influence the decisions of prosecutors or other law enforcement officers in the district of prosecution. *See, e.g.*, *United States v. Whitehead*, No. 22-CR-692, 2024 WL 3085019, at *7 (S.D.N.Y. June 21, 2024) (venue was proper where "[t]he Government introduced evidence that Manhattan-based agents and prosecutors had to obtain a second search warrant to seize the phone that was not recovered in the first search due to Defendant's statement"); *United States v. Wilson*, 512 F. App'x 75, 78 (2d Cir. 2013) (summary order) (venue was proper where defendant's false statements in New Jersey "were capable of distracting government investigators' attention away from a critical matter in the Southern

District of New York, where they undertook to decide what steps to take to execute the arrest warrant").

The defense's concern about permitting the Government to pursue "bootstrapped creation[s] of venue" by forwarding documents to far-flung locations is likewise overblown. Mot. at 5. If Mr. Reese believed that he would be subject to "hardship," "prejudice," or "[un]fairness" in this District, he could have, under Second Circuit precedent, challenged venue pursuant to a "substantial contacts" test. *Coplan*, 703 F.3d at 80. Faced with such a challenge, the court would consider "the site of the defendant's acts, the elements and nature of the crime, the locus of the effect of the criminal conduct, and the suitability of each district for accurate factfinding." *Id.* (quoting *United States v. Reed*, 773 F.2d 477, 481 (2d Cir. 1985)). But Mr. Reese did not challenge venue pretrial and has not argued that he suffered any prejudice as a result of the Government's decision to indict him for violating 18 U.S.C. § 1001 in this District. That is entirely understandable as he could not credibly claim that his contacts with this District were insubstantial. After all, the court that imposed the terms of supervised release that his false statements were calculated to avoid is located in this District.

Accordingly, the motion to set aside Mr. Reese's § 1001 conviction for improper venue is DENIED.

### III. The Jury's Conclusion that Mr. Reese Engaged in the Unauthorized Practice of Law Within or Upon a Federal Enclave Is Supported by the Record

The defense next argues that Mr. Reese's conviction for the unauthorized practice of law should be set aside because the Government failed to prove that Mr. Reese acted "within or upon" a federal enclave, as required by the Assimilative Crimes Act. Mot. at 6; 18 U.S.C. § 13. The defense concedes, however, that "the government provided evidence that Mr. Reese . . . transmitted documents into 40 Foley Square," at which the U.S. Court of Appeals for the Second

Circuit is located. Mot. at 6. The argument, therefore, is again purely legal: the defense contends that a defendant must be "physically present in a federal enclave" in order to be guilty of a crime under the Assimilative Crimes Act. Mot. at 7.

The Court already addressed this exact argument when it decided the defense's pretrial motions at the February 26, 2025, conference. As the Court explained,

> Section 484 [of the New York Judiciary Law] makes it a crime to "make it a business to practice for another as an attorney," meaning that it criminalizes the combination of two acts: practicing for another as an attorney and making it a business to do so. The first of these acts — practicing for another as an attorney — unquestionably includes preparing and filing legal documents. *See Upsolve*[*, Inc. v. James*], 604 F. Supp. 3d [97,] 112 [(S.D.N.Y. 2022)] ("Non-lawyers have been excluded from drafting pleadings and filing legal documents."). According to the Indictment, Reese filed documents he had prepared by emailing them to the chambers of federal judges, some of which are located at the federal courthouse at 40 Foley Square . . . on another's behalf. That other portions of the alleged crime took place outside the federal enclave is irrelevant. "[W]here a crime consists of distinct parts which have different localities, the whole may be tried where any part can be proved to have been done." *United States v. Lange*, 834 F.3d 58, 70 (2d Cir. 2016); *see also* 18 U.S.C. § 3237(a) (venue is proper in any district where the "offense was begun, continued or completed"). Because the Indictment contends that an essential part of Reese's crime — filing legal documents that he authored — occurred in a federal enclave, this Court has jurisdiction pursuant to the ACA.

Tr. of February 26, 2025, Conference, Dkt. 89, at 34:11–35:11.

For the same reasons set forth at the February 26, 2025, conference, the motion to set aside Mr. Reese's conviction for the unauthorized practice of law is DENIED.

### IV. The Jury's Conclusion that Mr. Reese Committed Wire Fraud and Conspiracy to Commit Money Laundering Is Supported by the Record

#### A. The Supreme Court's Decision in *Thompson v. United States* Does Not Disturb Mr. Reese's Convictions for Wire Fraud and Money Laundering Conspiracy

The defense next argues that Mr. Reese's wire fraud conviction (and, by extension, his conviction for conspiracy to commit money laundering, for which wire fraud was a predicate offense) must be set aside in light of the Supreme Court's recent decision in *Thompson v. United*

*States*, 145 S. Ct. 821 (2025).  *Thompson* concerned a defendant who was charged with violating 28 U.S.C. § 1014, which makes it unlawful for a person to "knowingly make any false statement" to FDIC-insured financial institutions.  145 S. Ct. at 825.  The Court concluded that, because § 1014 only prohibits making "false statement[s]," a defendant cannot be convicted for violating § 1014 for making statements that are "misleading but not false."  *Id.* at 828.  According to the defense, because the wire fraud statute, 18 U.S.C. § 1343, does not use the word "misleading," Mr. Reese cannot be guilty of wire fraud based on misleading but not factually false statements.

The defense's argument fails as a matter of law and fact.  Legally, *Thompson* is inapposite.  Unlike § 1014, which criminalizes only making "false statement[s]," the wire fraud statute sweeps broadly to prohibit "devis[ing] or intending to devise any scheme or artifice to defraud" and "obtaining money or property by means of false or fraudulent pretenses, representations, or promises."  18 U.S.C. § 1343.  The absence of broad language in § 1014 was what led the *Thompson* Court to construe that statute narrowly.  145 S. Ct. at 827 (listing statutes that explicitly criminalize "misleading" statements, as opposed to just false ones, to make the point that Congress knows how to criminalize misleading statements when it chooses to do so).  By contrast, the Second Circuit has repeatedly referenced wire fraud's more encompassing language as a reason to interpret the statute expansively.  *See United States v. Connolly*, 24 F.4th 821, 833 (2d Cir. 2022) ("To convict an accused of a wire fraud 'scheme to defraud,' however, the government need not prove an actual false statement so long as it proves a scheme to engage in some form of deception, such as a half-truth . . . ."); *United States v. Autuori*, 212 F.3d 105, 118 (2d Cir. 2000) (wire fraud statute may be "violated by affirmative misrepresentations or by omissions of material information that the defendant has a duty to disclose").

Even if the defense's argument were legally correct, it would still not be relevant because there was ample evidence at trial from which the jury could reasonably conclude that Mr. Reese

11

knowingly made false, rather than merely misleading, representations. It is well established, for example, that "[t]he expression of an opinion not honestly entertained is a factual misrepresentation." *United States v. Amrep Corp.*, 560 F.2d 539, 544 (2d Cir. 1977). In reviewing the evidence, the jury could well have concluded, in light of Mr. Reese's testimony that his representations about past success helped him secure sales, Tr. at 1105:12–1106:6, and his acknowledgement that thousands of his past motions had been denied, *id*. at 1154:25–1155:3, that he did not honestly entertain the view conveyed to victims that he could "guarantee" their release, GX 9 at 1, or that his motion's "chance[] of success is in the 100 percentile," *id.* at 9. Drawing all inferences in favor of the Government (as the Court must at this stage), there is more than sufficient evidence to support the conclusion that Mr. Reese knowingly made false statements within the meaning of the wire fraud statute.

   **B.**   **Mr. Reese's Remaining Rationales for Setting Aside the Wire Fraud Conviction Are Unpersuasive**

On reply, Mr. Reese submitted a *pro se* document presenting his own reasons why the wire fraud conviction should be set aside. He argues that some of the evidence that the Government presented — specifically, text messages between himself and Ms. Rhodes and evidence that certain filings with the Court of Appeals were made on behalf of victims who were aware that he was a convicted felon — "did nothing at all [to] further the alleged scheme to defraud" because they did not show that he "fail[ed] to disclose the fact that [he] was a convicted felon on supervised release with a restriction on having contact with convicted felons." Margulis-Ohnuma Decl. Ex. A, Dkt. 116-1, at 2–3. He argues that because the jury may have relied upon one or both of these sources of evidence when considering the wire fraud charge, that conviction must be set aside. *Id.* at 3.

Mr. Reese's argument is factually and legally wrong. As the Government explained during summations, the fraud charge was premised on the notion that Mr. Reese misrepresented

12

the likelihood that his victims would obtain favorable results if they hired him. *See* Tr. at 1353:5–7 ("There's a scheme to defraud here because Christopher Reese overpromised results that he couldn't deliver. He lied to get money."). The Court has already explained why the evidence in the record is sufficient to support the jury's finding on that theory. It is irrelevant, for purposes of the wire fraud conviction, whether the jury also concluded that Mr. Reese misled his victims about whether the terms of his supervised release allowed him to communicate with convicted felons.

Mr. Reese is also wrong, as a matter of law, to suggest that a verdict must be set aside if there is any possibility that the jury relied on a factually unsupported theory. In fact, the opposite is true: "where at least one legally valid prosecution theory is supported by the evidence at trial, a general verdict is valid even if the jury was instructed that it could convict based on a theory that was factually unsupported at trial." *Yu v. United States*, 183 F. Supp. 2d 657, 663 n.3 (S.D.N.Y. 2002) (citing *Griffin v. United States*, 502 U.S. 46 (1991)).

Accordingly, the motion to set aside Mr. Reese's convictions for wire fraud and conspiracy to commit money laundering is DENIED.

## CONCLUSION

For the foregoing reasons, Mr. Reese's motion for post-trial relief pursuant to Federal Rules of Criminal Procedure 29 and 33 is DENIED. The Clerk of the Court is respectfully directed to close the open motion at Dkt. 122.

The parties are reminded that Mr. Reese will be sentenced in connection with this case and the violation of supervised release in *United States v. Reese*, 12-CR-629 (S.D.N.Y.), on **August 20, 2025, at 2:30 P.M.** in Courtroom 20C of the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, New York, New York, 10007.  Sentencing submissions are due **August 6, 2025**.  These deadlines will not be adjourned again absent very good cause.

**SO ORDERED.**

**Date:  June 25, 2025**
**New York, NY**

**VALERIE CAPRONI**
**United States District Judge**