UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
                                                                 :
UNITED STATES OF AMERICA,               :
                                                                   :                     24-CR-402 (VEC)
              -against-                        :
                                                                   :                       MEMORANDUM
CHRISTOPHER REESE,                         :                     OPINION & ORDER
                         Defendant.         :
                                                                    :
-------------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

Defendant Christopher Reese filed objections to the Government's proposed restitution order. *See* Oct. 15, 2025, Letter (the "Letter"), Dkt. 145. With the exception of three points of contention to which the Government is directed to respond, Mr. Reese's objections are OVERRULED.

As an initial matter, despite being explicitly directed that any objections to the restitution order must be specific, *see* Sept. 25, 2025, Tr. at 73:23–74:2, Mr. Reese's made a blanket objection that the Government's restitution request relies on data derived from "summary documents" that the Government itself generated, rather on more reliable sources of proof. Letter at 2. This both runs afoul of the Court's direction that any objection must be specific and is plainly false. The majority of the cited exhibits were obtained directly from financial institutions and were authenticated and admitted at trial without objection. *See, e.g.*, GX 146 (Mr. Reese's Zelle records); GX 147 (declaration from the custodian of Mr. Reese's Zelle records swearing that the materials provided "were kept in the course of regularly conducted business activity"). Other materials cited in the Government's submissions are subpoenaed text messages and other evidence that, like the financial records, were admitted at trial without objection. *See, e.g.*, GX 8 (extraction of Facebook and WhatsApp messages from Mr. Reese's phone).

The Court will address Mr. Reese's specific objections in turn.

*First*, Mr. Reese objects to the Government's position that he owes Idris Sualim $34,460 in restitution because Sualim's payments to him were made in October 2019 and the Indictment "alleges conduct from 2020 on." Letter at 2. This is false: the Indictment charges Mr. Reese for conduct "[f]rom *at least* in or around 2020 through at least in or about 2023." Ind., Dkt. 1 ¶¶ 36, 38 (emphasis added).

*Second*, Mr. Reese objects to the Government's position that he owes Alam Jon Khudoykulov $25,000 in restitution because the name "Khudoykulov" does not appear in GX 8, the exhibit the Government cites in support of its position. GX 8 consists of Facebook and WhatsApp messages between Mr. Reese and various others. Although it is true that the name "Khudoykulov" does not appear in GX 8, the exhibit contains extensive evidence of conversations between Mr. Reese and a person named "Alam Jon," in which "Alam Jon" coordinates delivering money to Mr. Reese in exchange for legal services. *See* GX 8 at 1569–86. Mr. Reese testified extensively at trial about these exact messages and admitted, among other things, that "Alam Jon" had a courier deliver him $25,000 in cash in exchange for legal services. Trial Tr. at 1184:9–1186:8. There is, therefore, no doubt that a person named "Alam Jon" paid Mr. Reese $25,000; the only question is whether Alam Jon's surname is Khudoykulov. The Government is directed to explain how it ascertained Alam Jon's surname.

*Third*, Mr. Reese objects to the Government's position that he owes Dioselina Almanzar $2,700 in restitution because the two exhibits that the Government cites, GX 104 and 114, are supposedly inconsistent. No good-faith reading of the evidence could support this contention. GX 104 shows that on October 12, 2022, Ms. Almanzar attempted on three occasions to transfer $1,000 to Mr. Reese: the first two attempts were blocked, but the third was successful. *Compare* GX 104 at Rows 58, 60 (payment status "AUTOMATICALLY_BLOCKED") *with id.* at Row 61 (payment status "PAID_OUT"). GX 114 shows that Ms. Almanzar transferred an

2

additional $1,700 to Mr. Reese on October 13, 2022, *see* GX 114 at Row 288, making her total payment $2,700. The two exhibits, therefore, fully support the Government's calculation of the amount of restitution that Mr. Reese owes Ms. Almanzar.

*Fourth*, Mr. Reese objects to the Government's position that he owes Lavon Caldwell $2,000 in restitution because Caldwell's surname does not appear in GX 114, one of the exhibits that the Government cites as support. Mr. Reese's objection is not persuasive. GX 114 shows that a person with the first name "Lavon" made a payment of $1,500 via CashApp to Mr. Reese in April 2021.[1] *See* GX 114 at Row 3860. GX 114 also shows that, in March 2022, "Lavon" unsuccessfully sought a refund from Mr. Reese, and attached a payment memo that referenced her father. *See id.* at Rows 1383–97. GX 146, the other exhibit cited by the Government, shows that a person named Lavon Caldwell transferred $2,000 to Mr. Reese via Zelle in April 2021; the payment memo for that transfer read: "Dad lawyer." GX 146 at 24. The obvious inference is that the person referred to as "Lavon" in GX 114 is Lavon Caldwell.

*Fifth*, Mr. Reese objects to the Government's position that he owes Melissa Maldonado $6,500 in restitution because her surname does not appear in GX 114, the exhibit on which the Government relies as evidentiary support. GX 114 shows $6,500 in payments from someone with the first name "Melissa" to Mr. Reese in February 2021; the memos for those transfers read: "Donavan Gillard." *See* GX 114 at Rows 4396, 4401, 4403, 4431. Donavan Gillard is an inmate to whom Mr. Reese provided legal services. *See, e.g.*, GX 6001-45. Accordingly, there is clear evidence that a person named "Melissa" paid Mr. Reese to do legal work on behalf of Donavan Gillard. It is unclear, however, how the Government concluded that the payor's surname was

---

[1]   This $1,500 payment appears not to have been included in the Government's restitution request on behalf of Caldwell, presumably because, unlike the Zelle transaction, it does not include any notation indicating that the payment was for legal services.

Maldonado. The Government is directed to explain how it determined the payor was Melissa Maldonado.

*Sixth*, Mr. Reese objects to the Government's position that he owes Antuanet Velazco $6,200 in restitution and Teresa Kardoulias $5,000 in restitution because the underlying exhibits allegedly do not support those loss amounts.[2] Later in his motion, however, Mr. Reese concedes:

> [T]he Government was able to meet its burden of proof with regard to the witnesses who testified at trial. Ms. Velazco testified she gave Mr. Reese $6,200 . . . . and Ms. Kardoulias gave him $5,000. Those witnesses presented credible, direct evidence of the amounts they lost, and thus the Government met its burden with regard to that amount.

Letter at 3. The Court, therefore, construes Mr. Reese as having withdrawn his objections to the Government's restitution requests for Ms. Velazco and Ms. Kardoulias.

*Seventh*, Mr. Reese objects to the Government's position that he owes Carmen Rivadeneira $17,719 in restitution. This objection may be moot; the Government does not seek restitution for anyone named "Carmen Rivadeneira" in its most recent proposed restitution order. To the extent Mr. Reese intends to refer to the Government's restitution request for Carlos Humberto Heredia Rivadeneira, the Court agrees that it is unclear from the exhibit the Government cites as support, GX 146, how it concluded that Mr. Reese owes him $17,719 in restitution. The Government is directed to explain how it reached that conclusion.

*Eighth*, Mr. Reese objects to the Government's position that he owes Lynette Alvarez $4,000 in restitution because the two exhibits the Government cites in support of its request are purportedly inconsistent. This is false. GX 146 reflects a Zelle transfer of $2,000 from Ms. Alvarez to Mr. Reese in February 2022. *See* GX 146 at 29. GX 114 reflects a CashApp transfer of $2,000 from Ms. Alvarez to Mr. Reese on the same day. *See* GX 114 at Row 1536. GX 114

---

[2] Mr. Reese erroneously asserts that the Government seeks $6,700 in restitution for Ms. Velazco. The actual number is $6,200. *See* Gov. Letter, Dkt. 136, Appx. A.

also shows that, prior to making the Zelle transfer, she attempted to transfer $4,000 via CashApp, but she was unable to do so.  *Id.* at 1537 (payment status "AMOUNT_EXCEEDED_WEEKLY_TRANSACTION_LIMIT").  The total amount Ms. Alvarez paid, therefore, is $4,000:  $2,000 via Zelle and $2,000 via CashApp.

\* \* \*

In sum, it is unclear from the Government's submissions how it matched the first names "Alam Jon" and "Melissa" to the surnames "Khudoykulov" and "Maldonado," respectively, in its restitution request, and how it calculated the restitution amount owed to Carlos Humberto Heredia Rivadeneira.  The Government is directed to file a letter addressing these questions not later than **Friday, October 31, 2025**.  The remainder of Mr. Reese's objections are OVERRULED.

**SO ORDERED.**

Date:  October 24, 2025
      New York, NY

_____
      **VALERIE CAPRONI**
      **United States District Judge**