```
  1   UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
  2   ------------------------------x

  3   UNITED STATES OF AMERICA,

  4              v.                            12 CR 629 (VEC)
                                               24 CR 402 (VEC)
  5   CHRISTOPHER REESE,

  6                                            Conference
                         Defendant.
  7
      ------------------------------x
  8
                                               New York, N.Y.
  9                                            August 20, 2025
                                               11:00 a.m.
 10

 11   Before:

 12                   HON. VALERIE E. CAPRONI,

 13                                            District Judge

 14                          APPEARANCES

 15   JAY CLAYTON
           United States Attorney for the
 16        Southern District of New York
      TIMOTHY JOSIAH PERTZ
 17   KINGDAR PRUSSIEN
           Assistant United States Attorneys
 18
      ZACHARY MARGULIS-OHNUMA
 19   TESS COHEN
           Outgoing Attorneys for Defendant
 20
      DAVID BERTAN
 21        Incoming Attorney for Defendant

 22   Also Present:

 23   Sean Smyth, USAO Agent
      Anne Ayotte, Defense Paralegal
 24

 25
```

1               (Case called)

2               MR. PERTZ:  Good morning, your Honor.  Josiah Pertz
3      for the government, here with AUSA Kingdar Prussien and Special
4      Agent Sean Smyth of the U.S. Attorney's Office.

5               THE COURT:  Good morning, Mr. Pertz; good morning
6      Mr. Prussein; good morning Agent Smyth.

7               Can we call Mr. Prussien New Daddy?

8               MR. PRUSSIEN:  Good morning.

9               THE COURT:  Okay.  The front table and the audience
10     can sit down.

11              MR. MARGULIS-OHNUMA:  I'm Zachary Margulis-Ohnuma,
12     accompanied by my law partner, Tess Cohen, and our paralegal,
13     Anne Ayotte, representing the defendant, Christopher Reese, who
14     is standing to my left.  Good morning, your Honor.

15              THE COURT:  Good morning, Mr. Margulis; good morning
16     Ms. Cohen, Ms. Ayotte; and good morning, Mr. Reese.

17              THE DEFENDANT:  Good morning, your Honor.

18              THE COURT:  Please be seated, everybody.

19              So, I can't say it was entirely unexpected, but
20     yesterday I received a letter from Mr. Reese, saying he wants a
21     new attorney.

22              Mr. Reese?

23              THE DEFENDANT:  Yes, your Honor, that is correct.

24              THE COURT:  That is where you are, that you want a new
25     attorney?

1            THE DEFENDANT:  That is correct, your Honor.
2            THE COURT:  Can you explain to me why?
3            THE DEFENDANT:  Without getting into a mudslinging
4    contest or starting with a mudslinging contest --
5            THE COURT:  Without getting into a mudslinging contest
6    or what?
7            THE DEFENDANT:  Or starting a mudslinging contest.
8            -- there are, in my opinion, irreconcilable
9    differences between me and counsel.  And in an effort to sort
10   of, I guess, preserve as much of the attorney-client
11   relationship as possible --
12           THE COURT:  Well, you want to terminate the
13   attorney-client relationship.
14           I'm not asking you to disclose any --
15           THE DEFENDANT:  Okay.
16           THE COURT:  -- confidential communications that you
17   have had with your attorney.
18           THE DEFENDANT:  Okay.
19           THE COURT:  Let me just back up for a second.
20           Where we are in this case is sentencing.  Your
21   attorneys have been with you throughout this trial.  They are
22   in the best position to represent you at what is, at this
23   point, the critical question, which is, what is your sentence
24   going to be.
25           You want to raise a *Brady* issue.  Knock yourselves

out — that may be appropriate to raise on appeal, you think you've got a *Brady* claim — but where we are right now is sentence.  And the question is, is it your position that the attorney-client relationship is so harmed at this point because they won't take some step that you think is important, that you do not want them to represent you for purposes of sentencing, recognizing that if I appoint you a new attorney, whoever that new attorney is, is going to be representing you at sentencing on a very short schedule?  Because my view is that you're playing games with the Court.

So --

THE DEFENDANT:  I can assure your Honor, I'm not playing games with the Court.

THE COURT:  Well, I want to make sure you understand what your choices are.

THE DEFENDANT:  I do understand that.  And just to reiterate, I'm not playing games with the Court.  This is not something that --

THE COURT:  Look, your issue on this could have been raised weeks ago.

THE DEFENDANT:  It could have been raised a month ago, but that's the problem.

THE COURT:  But it wasn't.

THE DEFENDANT:  That is on counsel.  It's not on me. I tried to have counsel raise it.  I tried to have counsel

1  raise a number of issues that haven't -- I've presented it to
2  him, I've provided it to him.
3          Your Honor made it clear, I believe, during the last
4  appearance, that if there was some disagreement between me and
5  counsel, I provided it to counsel, counsel was still to provide
6  it to the Court.
7          THE COURT:  No, that was not what I said.
8          THE DEFENDANT:  That's what I understood.
9          THE COURT:  Well, you were wrong.
10         THE DEFENDANT:  Okay.
11         THE COURT:  The issue had to do with issues that your
12 attorneys viewed as being not entirely meritless, which is a
13 different standard and a different ruling than anything that
14 pops into Christopher Reese's head they are obligated to
15 forward to the Court.
16         THE DEFENDANT:  Okay, I understand that.
17         And I believe — I still believe — that there is a
18 conflict of interest in my present attorneys continuing to
19 represent me.  And I'm prepared to accept whatever decision
20 your Honor makes on that.  I've made the application for the
21 change of counsel.
22         THE COURT:  There's a conflict of interest because
23 what?
24         THE DEFENDANT:  Because we don't see eye to eye on a
25 number of things.

1    THE COURT:  Okay.  That's not a conflict.  That's just
2 that you have strategy differences, or tactical --
3    THE DEFENDANT:  I wasn't prepared to get -- I mean,
4 again, I respect the Court, but I disagree that there's not a
5 conflict of interest.
6    THE COURT:  Okay.  Well, again, let me make sure that
7 you understand what your choices are.
8    We can proceed with sentence today, with able counsel
9 representing you, assuming that y'all have had discussions
10 about the issues that are before me for purposes of sentencing,
11 which I have every reason to believe you have, or if you want
12 these attorneys discharged, then the question is going to be,
13 do you want to represent yourself or do you want me to appoint
14 new CJA counsel?  Because I've only appointed one set of CJA
15 counsel that didn't have a conflict.  You sort of got one free
16 change because you had accused your prior CJA attorney,
17 previously, of ineffective assistance.  Then that attorney is
18 going to have a short period of time to prepare for sentencing
19 because I want to get you sentenced before I leave town at the
20 end of the month.
21    So, those are your choices.
22    THE DEFENDANT:  And I appreciate it.  And I, again, I
23 don't think I can go forward with the attorney that I have now.
24 I'm prepared for sentencing, and I'm not prepared to represent
25 myself for sentencing, nor do I want to represent myself for

1  sentencing.  So I'm invoking, to the extent I haven't, my right
2  to counsel, and I would ask that the Court appoint counsel on
3  whatever schedule the Court sets.  I'm sure that -- I'm hopeful
4  that the new attorney would be able to meet that, but I'm ready
5  today.
6             THE COURT:  Okay.
7             Mr. Margulis, do you want to be heard?
8             MR. MARGULIS-OHNUMA:  Just very briefly, your Honor.
9             I don't think there's an actual conflict of interest.
10  I do think there are serious strategy differences that are my
11  choices to make, and I made them, and my client doesn't agree
12  with it.  He's lost confidence in me.  I don't want to
13  represent someone who's lost confidence in me.  I would, on
14  that basis, move to withdraw and echo what Mr. Reese said.
15             THE COURT:  Okay.
16             Does the government want to be heard?
17             You usually stay out of this, which is probably the
18  best thing to do, but --
19             MR. PERTZ:  I think the only comment I would add here
20  is, for scheduling, I would make a request of the Court, since
21  it's late August and we had scheduled our vacations around
22  sentencing being today, I would request a sentencing that isn't
23  in the next two weeks.  We share the Court's view that it
24  should be prompt.
25             THE COURT:  Okay.  Here's what my plan is:  I'm going

1    to -- save your breath for a second.

2             MR. PERTZ:  Okay.

3             THE COURT:  The CJA attorney who's on duty today is on
4    the list of many attorneys that Mr. Reese has accused of
5    ineffective assistance.  So, that attorney is conflicted.

6             The attorney on duty tomorrow was on the list of CJA
7    attorneys that Mr. Reese has not made accusations against, so,
8    she has been asked to hold tomorrow free.  What I'm going to do
9    is, I'm going to adjourn from today until tomorrow.  Tomorrow
10   we're going to set a sentencing date.  It is not fair to her to
11   ask her to do it tomorrow.  But there are — and this sort of
12   reeks of Christopher Reese's strategy more than Zachary
13   Margulis' strategy — many objections to the guideline
14   calculations, so I feel, in fairness to Ms. Cardi, who is the
15   CJA attorney on duty tomorrow, that she needs to at least
16   understand what the challenges are.

17            Do you have a problem with Ms. Cardi?

18            THE DEFENDANT:  I do, your Honor.

19            THE COURT:  She was not on the list.

20            THE DEFENDANT:  She wasn't on the list?

21            THE COURT:  Nope.

22            THE DEFENDANT:  Well, Ms. Cistaro is the one who
23   checked off the name.  I'm certain I recall hearing her name.
24   And I'm also certain there were several clients of Ms. Cardi's
25   that were also clients of mine.

1                THE COURT:  Who?

2                THE DEFENDANT:  I don't know -- and we spoke about

3    that just before we came out.  I don't remember the names.  If

4    your Honor wants, I can check later on today, and I can -- I'm

5    sure I can get the names, because I just can't remember who it

6    is off the top of my head.  But I know who she is, and I know

7    for certain.

8                THE COURT:  Okay.  Well, with all due respect, I'm not

9    going to take your word for it.  I want to know the name of the

10   client so we can double-check that.  If it's not Ms. Cardi,

11   it's going to be whoever is next.  So, that means I can't rely

12   on the list you previously provided me.

13               THE DEFENDANT:  I'm going to assume -- I'm assume,

14   yes, Ms. Cardi was on that list.

15               THE COURT:  Okay.

16               THE DEFENDANT:  I'm sorry, I didn't see the list that

17   she prepared.  We were on the phone, and she mentioned names.

18   I said yes or no.

19               THE COURT:  Okay.

20               So, you seem to have the ability to get things filed

21   or emailed to chambers, so, you need to email me, to chambers,

22   the name of the client that you allegedly represented that

23   Ms. Cardi was accused of ineffective assistance.

24               MR. MARGULIS-OHNUMA:  Judge, if you give me a minute,

25   I might be able to pull it up now from the trial record.

1                THE COURT:  Okay.
2                Does the government now, by chance?
3                MR. PERTZ:  We can also search.
4                THE COURT:  I'm sorry?
5                MR. PERTZ:  We could take a look.
6                THE COURT:  Okay.  Can you do that now?
7                MR. PERTZ:  May I ask if we have courtroom Wi-Fi
8    access?  That would speed things along.  Is that possible?
9    Probably not.
10               THE COURT: Poof.  No.
11               MR. PERTZ:  All right.  I'll see --
12               THE DEPUTY CLERK:  Make a hotspot off your phone.
13               MR. PERTZ:  Okay.  This will be slower, but we'll try
14   it.
15               (Pause)
16               THE COURT:  Okay.  We read the chart backwards.
17               David Bertan is on duty today.  We read the letter
18   submitted to us backwards.
19               MR. MARGULIS-OHNUMA:  So, it's not Dawn Cardi?
20               THE COURT:  Dawn Cardi is on duty tomorrow.  The CJA
21   attorney on duty today is David Bertan, who was on the list of
22   people that he does not have a conflict with.
23               MR. MARGULIS-OHNUMA:  Oh.  Good.
24               THE COURT:  Mr. Reese, do you have any reason to
25   believe you have a conflict with David Bertan?

| | |
|---|---|
| 1 | THE DEFENDANT:  I'm not sure I recall the name, your |
| 2 | Honor.  So, I don't at this moment. |
| 3 | THE COURT:  Okay, good. |
| 4 | Let's see if he is around and that we can get him over |
| 5 | here like at 11:30.  Are you all available at 11:30? |
| 6 | MR. PERTZ:  Yes, we are. |
| 7 | THE COURT:  So, we're going to work this out.  I'm |
| 8 | relieving Mr. Margulis and Ms. Cohen.  I'm going to ask the |
| 9 | marshals to hold Mr. Reese in the building until we get a hold |
| 10 | of Mr. Bertan and can see when we can get everybody together |
| 11 | for a status conference to set a new date on sentencing. |
| 12 | So, anything further from you, Mr. Margulis? |
| 13 | MR. MARGULIS-OHNUMA:  No.  Thank you, your Honor. |
| 14 | THE COURT:  All right. |
| 15 | Or Ms. Cohen? |
| 16 | MS. COHEN:  No, thank you, your Honor. |
| 17 | THE COURT:  With sincere thanks of the Court for your |
| 18 | representation of Mr. Reese, you are excused. |
| 19 | Why don't we do this:  Everybody can go about their |
| 20 | business.  We'll get back to you when we get a hold of |
| 21 | Mr. Bertan, and let you know what time you need to be back here |
| 22 | so that we can set a new schedule.  Okay. |
| 23 | MR. MARGULIS-OHNUMA:  Judge, let me just actually add |
| 24 | to the record that Mr. Reese orally authorized me to share |
| 25 | information, all information, with Mr. Bertan.  So, I will make |

P8KKREECF

1   everything available to him.
2           THE COURT:  Terrific.  And providing the file will be
3   appreciated.
4           Okay, terrific.  Thanks, everybody.
5           MR. PERTZ:  Thank you.
6           (Recess)
7           THE COURT:  All right.  So we're back together with
8   Mr. Reese.
9           Mr. Reese, this is Mr. Bertan.  Actually, Mr. Bertan,
10  would you like to note your appearance for the record?
11          MR. BERTAN:  David Bertan for Mr. Reese.
12          Your Honor, I spoke with Mr. Reese briefly in the pens
13  behind the courtroom.
14          THE COURT:  Terrific.
15          So, just to catch you up on where we are, you have
16  just relieved Mr. Reese's trial counsel because they have
17  irreconcilable differences about strategy.  Mr. Reese alleges
18  it's a conflict of interest, but it's really a strategy
19  dispute.
20          Where we are in this case is, we are ready for
21  sentence on the underlying criminal conviction.  There is an
22  outstanding violation of supervised release that charges
23  essentially the same things that he was convicted of at trial.
24  He says he's prepared to plead guilty to that violation, but
25  with Mr. Reese, I believe something is going to happen when it

1  happens and not before then.  So he may ultimately decide to
2  contest that.  If he contests it, I anticipate the government
3  will move into evidence the trial record, and I can decide it
4  based on the trial record subject to any other evidence that
5  Mr. Reese wants to put in on the violation.  So, that's where
6  we are on that.
7              In terms of posttrial motions, those have already been
8  made and decided.  There are, however, a number of disputed
9  issues relative to the guideline calculation.  In fact,
10 virtually every step of the guideline calculation has been
11 disputed.  So, at the time of sentence, I will deal with those,
12 but just fair warning that there are a lot of guideline issues
13 that need to be resolved.
14             So, with that, it is my desire to give you time to at
15 least read the presentence report and speak with Mr. Reese and
16 get your thoughts together for sentencing, including on all
17 these various guideline issues.  The government told me, when
18 we were here earlier today, that they, in reliance on the fact
19 that the sentence was supposed to go forward today, have
20 vacation planned for the next two weeks — that's good for you,
21 Mr. Bertan — and then I am out of town for the first three
22 weeks of September.
23             So, that brings us to the week of the 22nd.  That is
24 the week of Rosh Hashanah.  Is that a problem?
25             MR. BERTAN:  It's a problem until the 25th.

1           THE COURT:  Okay.
2           MR. BERTAN:  I will be available on the 25th.  I also
3   have a vacation scheduled for next week.  So, this all --
4           THE COURT:  Perfect, this all works out.
5           MR. BERTAN:  Serendipity once in a while favors me.
6           THE COURT:  Absolutely.
7           How about from the government's perspective?  Would
8   the 25th work?
9           MR. PERTZ:  That works.  Thank you.
10          THE COURT:  Let's say September 25th at 10:00 a.m.
11          MR. BERTAN:  That's fine.
12          THE COURT:  So, 10:00 o'clock on the 25th.
13          Anything further from the government, Mr. Pertz?
14          MR. PERTZ:  No, your Honor.
15          THE COURT:  Anything further from the defense,
16  Mr. Bertan?
17          MR. BERTAN:  Just one question:  Do you need me to
18  file a notice of appearance?  Or will the --
19          THE COURT:  I think you do.
20          MR. BERTAN:  Okay.  I'll file it.
21          THE COURT:  Maybe it will make it easier, to make sure
22  you get all the ECF bounces immediately.
23          MR. BERTAN:  Fair enough.  I'll do that tonight.
24          THE COURT:  All right, Mr. Reese.  The prior
25  admonition continues.  You cannot file materials on your own.

P8KKREECF

1  You are represented.  If you decide that you don't want to be
2  represented by Mr. Bertan and you want to represent yourself,
3  that's fine, but I am not allowing hybrid representation.
4  We're down to sentence.  So, everything has to come through
5  Mr. Bertan.
6         If you and he can't reach agreement on what's
7  happening in this case, your choice at that point is going to
8  be to represent yourself or to hire counsel.  Sentencing is
9  going to go forward on the date it is scheduled.
10         THE DEFENDANT:  Understood.  Thank you, your Honor.
11         THE COURT:  Absolutely.
12         Okay.  Thanks, everybody.  I'll see you in September.
13         MR. BERTAN:  Thank you, your Honor.
14         THE COURT:  Everybody, enjoy your holidays.
15         MR. PERTZ:  Thank you, your Honor.
16         MR. BERTAN:  Thank you, your Honor.
17         (Adjourned)